THE STATE vs. HAMMOND.

| 35 | 315 |
| 74 | 284 |
| 35 | 315 |
| 88 | 178 |
| 35 | 315 |
| 101 | 431 |
| 35 | 315 |
| 111 | 141 |
| 35 | 315 |
| 112 | 312 |

CRIMINAL LAW. (1–4) *The statutory crime of "murder in the third degree," defined.* (5) *Manslaughter in the first degree.*

1. Murder in the third degree, under our statutes, is the unlawful killing of a human being, without any design to effect death, by a person *engaged in the commission of a felony.* R. S., ch. 164, secs. 1, 2; Tay. Stats., 1826, §§ 1, 2.

2. The word *felony,* in said statute, means an offense punishable by imprisonment in the state prison. R. S., ch. 172, sec. 14.

3. Those personal injuries not inflicted with an *ulterior* criminal intent, (as to rob, murder, etc.), which may be punished by imprisonment in the state prison, are all enumerated in sec. 31, ch. 164, R. S. (Tay. Stats., 1830, § 31).

4. Where the jury find that there was no intent to kill, and the circum stances of the killing do not furnish any evidence of intent to "maim or disfigure" in any of the ways mentioned in said statute, a verdict of murder in the third degree must be set aside, and a new trial grant ed, on defendant's motion.

[5. If the circumstances of the killing show that defendant intended to commit an assault and battery upon the deceased, he may be convicted of manslaughter in the first degree. *Rowan v. The State*, 30 Wis., 129.]

REPORTED from the Eleventh Judicial Circuit.

The case comes to this court on the report of the judge of the eleventh circuit, made pursuant to the statute.    R. S., ch. 180, sec. 8 (Tay. Stats., 1946, § 8).

The defendant was tried for an information against him for murder, and was convicted of murder in the *third* degreee. The material facts are stated in such report as follows :

" Upon the trial it appeared in evidence that the defendant, while walking along a street of Ashland in the night, several of his acquaintances being near him, before and behind, going in the same direction, encountered the deceased upon the sidewalk, the latter being at the time more or less intoxicated, having been drinking with the defendant and others a short time before.    The defendant, after a brief verbal altercation with the deceased, in which he expostulated with the latter for stopping him on the sidewalk, and threatened to shoot him, did then and there purposely shoot the deceased with a revolver, the bullet from the revolver entering the front part of the head of the deceased, passing through his brain, and causing his death on the following day.

" There was no evidence tending to show, nor was there any pretense or ground for pretense on the trial, that the defendant was engaged in the commission of any felony, other than such as was involved in the shooting above set forth.    And there were, on the evidence, no other grounds than those above indicated, upon which the jury might determine whether the defendant, in shooting as aforesaid, designed to kill the deceased or not."

A motion on behalf of the defendant to set aside the verdict, and for a new trial, was submitted to the court, and denied, the court holding (as stated in the report), "that there were in the evidence grounds upon which the jury might have concluded that the defendant's actual intention in shooting (as distinguished from a constructive or presumptive intention), did not go beyond a design to disable the deceased; and in such case it might be said that the defendant perpetrated the killing without any design to effect death, but while engaged in the commission of a felony, e. g., an assault with intent to disable or maim the deceased."

The following are the questions of law arising in the case, upon which the opinion of this court is demanded:

"First. Was there any warrant for such a construction of the evidence as the circuit judge stated might have been adopted by the jury,— there being no other grounds therefor than such as are hereinbefore indicated?"

"Second. If not—that is to say, if the evidence admits only of such a construction as would exclude the consideration of any felony other than the homicide for which the defendant was tried,— can the verdict be sustained?"

*The Attorney General,* for the state, in addition to the grounds upon which the circuit court denied a new trial, suggested that as the statute does not provide that the defendant shall have been engaged in the commission of any *other* felony than the act of killing, a proper construction of it would sustain the verdict; that, all the evidence not being reported, the jury might have found that defendant made the assault with intent to commit manslaughter, mayhem, or some other felony mentioned in § 45, ch. 174, Tay. Stats. (p. 1832); and that as the report clearly shows that defendant ought to have been convicted of murder in the *first* degree, he cannot complain that he was convicted of the lesser offense.

*J. D. Ensign* and *J. C. Mathews, contra,* contended that in construing the subdivisions of the statute relating to homi-

cide, "each subdivision should be so construed as to provide for a separate and distinct class of cases, and so as to include all cases it is intended to embrace, and exclude all others" (*Darry v. The People*, 2 Parker, 608, 641; *People v. Johnson*, 1 id., 291); that the degree of homicide found by the jury must correspond with the "facts and circumstances" of the case (Tay. Stats., 1326, § 1); that there was no warrant for such a construction of the evidence as the circuit judge stated might have been adopted by the jury (*Foster v. The People*, 50 N. Y., 598, 603 et seq.); and that, the jury having found virtually that defendant, without design, effected death while engaged in the commission of a felony, and there being no evidence that he was committing a felony, there was nothing to sustain the verdict.

LYON, J. Murder in the third degree is the unlawful killing of a human being, without any design to effect death, by a person engaged in the commission of a felony. R. S., ch. 164, secs. 1 and 2 (Tay. Stats., 1826, §§ 1, 2). The verdict in this case is, therefore, that the defendant did not design or intend the death of the deceased, but that he unlawfully killed him while he (the defendant) was engaged in the commission of some felony. It was doubtless entirely competent and proper for the jury to negative the proposition that the defendant intended to kill the deceased; and if the evidence justified the finding that the defendant was engaged in committing a felony when he killed the deceased, the conviction of murder in the third degree is right; otherwise not.

The term "felony," as used in the statute above cited, must be construed to mean an offense for which the offender, on conviction, shall be liable to be punished by imprisonment in a state prison. R. S., ch. 172, sec. 14; *Nichols v. The State, ante,* p. 303.

At the time he killed the deceased, was the defendant engaged in committing an offense liable to be thus punished? If

the defendant did not intend to kill the deceased, there is no testimony tending to show that the shooting of the deceased was done with any felonious intent, other than an intent to inflict personal injuries upon him. Those personal injuries which are not inflicted with an ulterior criminal intent (as an intent to rob, or to murder, and the like), but for which the perpetrator is liable to be punished by imprisonment in the state prison, are fully enumerated in the following statute : "If any person, with malicious intent to maim or disfigure, shall cut or maim the tongue, put out or destroy an eye, cut or tear off an ear, cut or slit or mutilate the nose or lip, or cut off or disable a limb or member of any person," such person shall be punished, etc. R. S., ch. 164, sec. 31 (Tay. Stats., 1830, § 31). It is not sufficient that the defendant was engaged in inflicting a great bodily injury upon the deceased ; but in order to render the act punishable by imprisonment in the state prison, it is essential that the defendant should have been engaged (at the time the homicide was committed) in committing one of the specific injuries enumerated in the above statute.

Keeping in mind the fact that the defendant did not design to kill the deceased, what is there in the manner in which his death was produced to warrant the inference that the defendant intended to inflict any one of such specific injuries? We find nothing therein, or in any of the circumstances of the case, which shows or tends to show any such specific intent. Doubtless it may reasonably be inferred that the defendant was intending to commit an assault and battery upon the deceased, and was in the act of so doing, when he killed the latter. In such case a conviction for manslaughter in the first degree might be sustained. *Rowan v. The State*, 30 Wis., 129.

The foregoing views are fully sustained by the court of appeals in *Foster v. The People*, 50 N. Y., 598. Premising that in New York murder in the *second* degree is the same grade of offense as murder in the *third* degree in this state, the following extract from the opinion by Judge ANDREWS will show the

views of that court, and also the similarity, in some respects, of the two cases. The judge says: "The refusal of the court to charge that if the prisoner intended to maim and not to kill, the offense was murder in the second degree, was proper, for the reason that there was no evidence upon which the jury could have found that the prisoner intended to fracture the skull of the deceased, as distinguished from an intent to kill him. The request assumes that the prisoner acted, in striking the blow, after having formed an intent as to the extent of the injury to be inflicted. His act was a blow with an iron bar upon the head of the deceased, with a force which crushed the skull and drove it in upon the brain. There was no evidence from which his intent could be ascertained, except what was furnished by the facts preceding the assault, and by the act itself and its results. It is a fundamental rule of evidence, of very general application, founded upon observation and experience, that a man is presumed to intend the natural consequence of his acts. In this case death ensued, as it was likely to ensue, from the act of the prisoner. And while it was for the jury to determine with what intent the blow was inflicted, we cannot, without doing violence to common sense, say that the prisoner may have intended to break the skull of Putnam without producing death. Such an intent cannot be predicated of his act, and there is no evidence to establish it. If the prisoner acted from premeditation, he may have intended to kill the deceased, or simply to do him a bodily injury; but that he intended the particular injury of breaking the skull only, cannot be inferred." (P. 608.)

So in the present case it was absurd for the jury to find that the defendant sent a bullet crashing through the head and brain of the deceased without any design to kill him, but with a design to inflict upon him one of the specific injuries above mentioned, for which the perpetrator, on conviction, is liable to be punished by imprisonment in the state prison.

We are clearly of the opinion that both questions propound-

ed to us by the learned circuit judge should be answered in the negative. ·It will be so certified to the circuit court, with the advice that the verdict be set aside and a *venire de novo* awarded.

*By the Court.* — Ordered accordingly.