PLIEMLING vs. THE STATE.

CRIMINAL LAW: MURDER. *(1, 2) When attempted felony, resulting in unintentional killing, converts such killing into murder. (3) Case stated; verdict set aside.*

1. On trial of an indictment for murder in the first degree, where the evidence, if it shows that defendant committed the homicide at all, shows also that he *intended* to cause the death of the person actually killed, and there is no evidence of those facts, in respect to his being engaged at the time in the commission of some other felony, which would convert an unintentional homicide into murder in the third degree, a verdict of murder in that degree must be set aside.
2. The felony, attempted or committed, resulting in death, from which the implied malice necessary to murder is derived, must be such that the killing is naturally consequent thereupon.
3. In this case, the homicide was of four persons, a mother, her son aged seven years, her daughter aged four, and a female babe seventeen months old. The evidence tended to show that they were all killed, during the night, while lying in two separate beds in the same room, by having their skulls broken with great violence with a hammer, and that the house was then burned down to conceal the crime; and there was some circumstantial evidence pointing to defendant as the criminal. The verdict was of murder in the third degree; and the record seems to show that the jury concluded or assumed that defendant, at the time of the

homicide, was committing or attempting to commit either rape upon or adultery with the mother. *Held,*

(1) That neither of these felonies is one from which the homicides shown by the evidence could result as a natural consequence; but such homicides and such rape (or adultery) must have been distinct and independent acts.

(2) That there is a total lack of evidence that defendant, or other person who committed the homicides, was in fact engaged in committing or attempting either rape or adultery.

(3) That the verdict must therefore be set aside.

ERROR to the Circuit Court for *Monroe* County.

The case is stated in the opinion.

*J. W. Losey* and *S. N. Dickinson,* for the plaintiff in error.

For the state, there were briefs by *J. M. Morrow,* District Attorney of Monroe county, and *A. E. Bleekman,* and oral argument by *Mr. Bleekman* and *H. W. Chynoweth,* Assistant Attorney General.

ORTON, J. This is an information for murder in the first degree, with five counts, stated in common-law form; the first count of which charges the murder of one Laura Van Voorhees, the mother; the second of Edward, her son; the third of Stella, her daughter; the fourth, of Claudia, her female babe; and the fifth, the murder of all four together.

The verdict of the jury was, guilty of murder in the third degree, under the fifth count of the information.

The facts in brief were as follows: In the evening of the first day of November, 1877, the small house in which the Van Voorhees family lived, was burned; in the smouldering ruins of which the partly burned remains of Laura Van Voorhees, the mother, of Edward, her son, of Stella, her daughter, and of Claudia, her female babe, were found. The mother was twenty-five years, Edward seven years, Stella four years, and Claudia seventeen months of age. They had evidently retired to rest for the night; the mother, Stella and Claudia side by side in a bed in one corner of the room, and Edward

on a lounge or cot in another corner, their usual sleeping places; and their remains were found in the same position relatively as lying when asleep, with the bed and the cot burned from under them. Parts of the cranium of each one were unconsumed by the fire; and the great preponderance of the medical testimony tended to show that the skull of each one of them had been broken and crushed in by the use of some blunt instrument with great violence, producing death, before the burning. Near some of the remains, a hammer with a broken handle was found, with which such wounds might have been made.

The verdict of the jury, convicting the defendant of murder in the third degree of all of these persons together, rests wholly upon the assumption that he committed the deed substantially in the manner and under the circumstances above stated.

The relationship, sex, age and condition of the persons killed; the time, place and horrible circumstances of the deed; the mother' with her little daughter and female babe by her side in the bed, it may be, and quite likely, asleep; and the little boy on his cot in a distant corner of the room, in the night time, with no appearances of struggle or resistance; their skulls crushed in with a blunt instrument, used with great violence, producing almost instant death; and the house set on fire to consume the bodies of the slain and to exterminate the evidence of the homicide — must all be considered in determining the character of the act, and the degree of guilt involved in its perpetration. There being no direct evidence whatever of the homicide, the case rested upon purely circumstantial evidence of the previous relations and conduct of the parties, and of subsequent discovery of isolated facts and circumstances tending to connect the defendant with the homicide, which it is unnecessary to notice. From the evidence and the instructions of the learned judge to the jury, it is apparent that the case was tried and considered by the jury upon the suppositions or theories: first, that the deaths were produced by the burn-

ing building; second, that it was murder in the first degree; and third, that the defendant did the killing without any design to effect death, while engaged in the commission of rape upon or adultery with the deceased Laura Van Voorhees, and was therefore guilty of murder in the third degree. The verdict must have been rendered upon the last theory or finding.

We shall not inquire whether there was sufficient evidence to connect the defendant with the homicide, but assume that there was; and we shall first consider the case conceding that there was sufficient evidence for the jury to find that the defendant, when he did the killing, was engaged in the commission of rape or adultery.

Murder in the third degree is "the killing of a human being, without a design to effect death, by a person engaged in the commission of any felony." Sec. 4345, R. S.

The three degrees of murder by our statute were comprised in the general crime of murder at common law; and murder in the third degree must have the same requisites as murder at common law; and the degree established by the statute is based, not upon the fact that it is any the less murder, but upon the character of the homicide, and the punishment to be suffered for the homicide, committed under such conditions and circumstances as would be murder at common law. The offense of murder in the three degrees, as defined by our statute, was so before the statute, and is but the adoption or introduction into the statute, of the common law description of the crime. *The People v. Enoch*, 13 Wend., 159.

It is sometimes stated that the object of this classification is to make a distinction between murder with express malice and murder with implied malice. In the killing without the design to effect death, there can be no actual malice or intention in the act itself; and in murder in the third degree such malice and felonious intent, necessary to make it murder, is derived from the felony by the commission of which, or in the commission of which, the killing happens. In the state

of Maine, murder in the second degree is the same as murder in the third degree by our statute; and in *State v. Smith,* 43 Me., 369, the court says: "The malice is implied when the killing is committed by a person when in the perpetration of a crime punishable in the state prison; and if in the perpetration of that offense a killing occurs, the malice making murder in the second degree may be implied." This is substantially the definition given to this particular kind of murder at common law. "Such killing shall be adjudged murder which happens in the execution of an unlawful action principally intended for some other purpose, and not to do a personal injury to him in particular who happens to be slain;" or, "Such killing as happens in the execution of an unlawful action, whereof the principal intention was to commit another felony;" or, "Whenever a man happens to kill another in the execution of a deliberate purpose to commit any felony, he is guilty of murder." "And not only in such cases where the very act of a person, having such a felonious intent, is the immediate cause of a third person's death, but also when it any way occasionally causes such a misfortune, it makes him guilty of murder." 1 Hawk. Pleas of the Crown, pages 86, 89, 100. So also at common law, "if a person commit a criminal misdemeanor which is of such a sort as to endanger life, so that the element of danger concurs with the unlawfulness of the act, the accidental causing of death is murder" (2 Bish. Crim. Law, § 691); and this latter killing is by our statute manslaughter in the first degree; and this explains what is meant by the clause in the section defining it, "in cases where such killing would be murder at common law." In the killing without design, while ,in the commission of a misdemeanor, which makes the crime manslaughter, precisely the same principle, and evidence of similar effect, obtain, as in murder in the third degree; the only difference being that between a felony and a misdemeanor, the felony imputing malice which makes murder, and the

misdemeanor not; and in such case the " homicide which *results* from the perpetration of offenses below the degree of felony, and without malice, is manslaughter." *State v. McNab*, 20 N. H., 160; 1 Russell on Crimes, 527; 1 East Crim. Law, 218. The elements of the crime of murder in the third degree, and the proof necessary to convict in such a case, as above stated, at common law and by statute, are recognized fully by this court in *The State v. Hammond*, 35 Wis., 315, and by *Foster v. The People*, 50 N. Y., 598, cited approvingly in that case by Mr. Justice Lyon.

It will be seen by the above authorities, that, in order to make a killing without a " design or intention " murder in the third degree, the felony, committed or attempted, from which the implied malice necessary to murder must be derived, must at least have intimate relation and close connection with the killing, and must not be separate, distinct and independent from it; and when the act constituting the felony is in itself dangerous to life, the killing must be naturally consequent to the felony. In this case, the felony, being rape or adultery, has no such relation to the killing, as a consequence from it or in close connection with it, as to make it possible to impute the felonious intent of the act constituting the rape, to the killing in the manner shown by the evidence and without design, the implied malice necessary to make it murder in the third degree.

The rape, or adultery, and the killing are so distinct and disconnected and independent from each other, in all the particulars of the killing *proved*, and all the possible particulars of the ravishment imagined or *assumed*, that the degree of homicide could not be mitigated or lessened, but would rather be enhanced by the commission of the double crime.

But let it be assumed that the act of rape or adultery is in itself dangerous to life, and that the killing happened or occurred, without design, from the act of rape or adultery, or during its commission, so far as Laura Van Voorhees is con-

cerned; yet by no possible construction of law or mode of reasoning could the killing, in the manner stated, of the little boy in a distant part of the room, of the little girl of only four years of age, and of the unconscious babe, be a consequence of, or have any connection or relation with, the ravishment of the mother, either as showing a killing without design, or to transfer the felonious intent of the act of ravishment to the unintentional killing of the three children.

But there are two other indispensable requisites or elements of this crime: 1st. The commission or attempted commission of the felony, which in this case is supposed to be the crime of rape or adultery; and 2d, the killing *without design.*

There may be some vague evidence of former improper relations between the defendant and Laura, casting some suspicion, perhaps, upon the chastity of both, and of some feeling of hostility and fear or dread upon her part, and some hostility or evil design upon his; but there is absolutely no evidence whatever of any rape or attempted rape or adultery at the time of the killing, or of any other felony than what is constituted by the killing itself. It is a mere supposition, guess or theory, of a ravishment or adultery, or attempted ravishment, predicated solely upon the previous relations of the parties, which do not naturally or logically, and by no means necessarily, form the premises of any such conclusion. The case is as barren of all evidence of the commission or attempted commission of a felony separate from the killing, as the above cases in 50 N. Y., 598, and 35 Wis., 315; and the act of killing in both of those cases, in respect to the instrument used, and the deadly consequence, is very similar to that in this case; and the learned opinions in both cases upon the manner of the killing would have been more pertinent and have greater emphasis in this case, where the conviction is for the killing of four persons instead of one, and those persons the mother and her children. In the first case above last

cited, the court say: "The refusal of the court to charge that if the prisoner intended to maim and not to kill, the offense was murder in the second degree, was proper, for the reason that *there was no evidence upon which the jury could have found* that the prisoner intended *to fracture the skull* of the deceased, as distinguished from an intent to kill him; . . . and while it was for the jury to determine with what intent the blow was inflicted, we cannot, *without doing violence to common sense*, say that the prisoner may have intended *to break the skull* without producing death." This court said in the opinion in *The State v. Hammond, supra:* "So, in the present case, *it was absurd* for the jury to find that the defendant *sent a bullet crashing through the head and brain* of the deceased, without any design to kill him, but with a design to inflict upon him one of the specific injuries above mentioned, for which the perpetrator, on conviction, is liable to be punished by imprisonment in the state prison." That there was no evidence of the commission of a rape or adultery, or any other felony than the killing of the four persons in the manner above stated, and that such killing could not have been *without design to effect death*, is too clear for further argument or authority. This being so, although the verdict is for an offense included in and less than murder in the first degree, for which the defendant might have been convicted under the information upon sufficient evidence, if unsustained by the evidence and by facts necessary to constitute the offense of murder in the third degree of which he was convicted, the verdict is erroneous, and the judgment must for that reason alone be reversed. See *The State v. Hammond, supra,* and *The State v. Erickson,* 45 Wis., 86.

As to the evidence connecting the defendant with the homicide, we shall say nothing; but if the jury were satisfied beyond a reasonable doubt, as they should have been in order to convict him at all, that the defendant was guilty of this horrible deed, then it is quite evident that the verdict was a

compromise, of the most unjustifiable if not reprehensible character; and if they were not so satisfied, then the verdict was a wrong and a crime. Looseness and latitudinarianism in the construction of criminal law, and in judicial trials of grave offenses, and compromises of legal principles and of honest judgment, in order to effect some agreement or to render some verdict in the trial of high crimes or of offenses of any grade, induced by whatever influence, must not be tolerated by the courts; and the responsibility in such cases must rest upon the tribunal in which it is practiced or attempted. So far as possible, there should be absolute certainty in the administration of criminal law; and its essential principles will not be perverted or compromised by this court in any case, in consideration of future proceedings or ultimate results.

*By the Court.* — The judgment of the circuit court is reversed, and the cause remanded for a new trial. The warden of the state prison will surrender the plaintiff in error to the sheriff of Monroe county, who will hold him in custody until he shall be discharged, or his custody changed by due course of law.