THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOSE HERNANDEZ ZERTUCHE, Defendant-Appellant.

(No. 71-152;

Second District—May 1, 1972.

Ralph Ruebner, of Defendant Project, of Elgin, (Kenneth L. Gillis, of counsel,) for appellant.

William Ketcham, State's Attorney, of Elgin, (Leo Wotan, Jr., and W. Ben Morgan, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

The defendant, Jose Hernandez Zertuche, was indicted for murder, found guilty in a jury trial and sentenced to the penitentiary for a term of fifty years.

It is undisputed that on the evening of August 28, 1970, the defendant shot Richard Ochoa in front of the Guadalupano Club in Elgin, Illinois. Ochoa died from the wound ten days later. There were no eyewitnesses to the actual shooting.

The defendant admitted the shooting but alleged self-defense. At the trial, he testified that he first became acquainted with the deceased in Michigan in 1960 or 1961 and met him again in Elgin in 1969; later, having no money, Ochoa moved in with him and they lived together for two months; that after moving out, Ochoa, without defendant's permission, charged a case of beer and ten dollars to defendant's account at a local tavern. Informed of this debt by the proprietor of the tavern, he approached Ochoa about payment, but Ochoa refused and called him names.

Zertuche further testified that during the late afternoon on the day of the shooting, he saw Ochoa at a tavern and Ochoa called him names; he became frightened and left. Later that evening, he went to the Guadalupano Club and saw Ochoa sitting across the bar from him, laughing and making gestures; he went to the men's room, Ochoa came in, swore at him, pushed him, and so frightened him that he hastily left the men's room. Defendant stated that when an off-duty police officer (in the Club in a social capacity) left, he followed a minute later in order to have "some protection". After he exited the Club and was on the sidewalk a few feet away from the door, he heard the door slam behind him, he turned, saw Ochoa coming toward him as if to tackle him, became

frightened, pulled out a gun he had been carrying to protect himself from Ochoa, and shot him.

Zertuche also testified that when Ochoa lived with him he had observed him cleaning a gun and knew it was Ochoa's habit to carry the gun on his person or in his car. There was evidence that Ochoa was seventeen years younger, taller and heavier than Zertuche.

Having been informed of his rights, Zertuche, when first questioned by the police, allegedly stated Ochoa had been giving him "a hard time" that night, calling him an "old goat" and an obscene name; that Zertuche told Ochoa they would go outside and settle it; outside the Club, Ochoa again called Zertuche an old goat and Zertuche then shot him. On the stand, the defendant denied making these statements to the police. Except for the existence of the tavern debt charged to Zertuche, the defendant's version of happenings was uncorroborated.

On appeal, defendant contends that the trial judge erred in refusing to give jury certain instructions, one based on IPI—Criminal 7.05 which defines the crime of voluntary manslaughter, as follows:

"A person commits the crime of voluntary manslaughter who intentionally or knowingly kills another if, at the time of the killing, he believes that circumstances exist which would justify the killing, but his belief that such circumstances exist is unreasonable."

The court also refused to give defendant's instruction which stated the issues in the offense of voluntary manslaughter and defendant's instruction which was a verdict form for conviction of voluntary manslaughter. ■■ The law is that:

"* * * in homicide cases, if there is evidence in the record which, if believed by the jury, would reduce the crime to voluntary manslaughter, an instruction defining that crime should be given, if requested." [Citations omitted.] *People v. Joyner* (1972), 50 Ill.2d 302, 306.

The defendant contends the jury could have found from the evidence that Zertuche had an unreasonable belief that he was justified in using lethal force to protect himself and, consequently, could have found him guilty of voluntary manslaughter rather than murder. (See, Ill. Rev. Stat. 1969, Ch. 38, Sec. 9—2(b).) The State argues that, assuming the actual occurrence of events which defendant described, no facts or circumstances existed from which the defendant could have formed a reasonable or unreasonable belief that he was justified in using lethal force to protect himself.

■■ At the request of the defendant, the trial judge instructed the jury on the law of self-defense by giving IPI—Criminal 24.06 in its entirety as follows:

"A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force.

However, a person is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself."

The rule is that an instruction should not be given without evidence to support it. (*People v. Allen* (1972), 50 Ill.2d 280, 278 N.E.2d 762, 765; *People v. Burnett* (1963), 27 Ill.2d 510, 511; *People v. Reno* (1927), 324 Ill. 484, 493; and *People v. Brown* (1967), 89 Ill.App.2d 231, 239.) We must conclude that the trial court found there to be evidence from which the jury could find the defendant had a *reasonable* belief that use of lethal force was justified.

■■ The difference between acquittal because of self-defense and conviction for voluntary manslaughter is that:

"* * * in the former instance the belief that the use of force is necessary is reasonable under the circumstances, and in the latter, the belief is unreasonable * * *." *People v. Joyner, supra,* 307.

It seems inconsistent for the trial court to find there to be evidence from which the jury could conclude that defendant had a *reasonable* belief that he had to shoot Ochoa in order to prevent great bodily harm or death while, at the same time, it found there to be no evidence to show that the defendant had an *unreasonable* belief that he was justified in committing the same act. Under the circumstances of the instant case, we hold that the self-defense instruction having been given, the voluntary manslaughter instruction should also have been given. *People v. Johnson* (1971), 1 Ill.App.3d 433, 435.

■■ The defendant also claims error in the jury having been given an instruction defining reasonable doubt. This instruction should not have been given.

"* * * [W]e have so frequently discussed the futility of attempting to define or elaborate on * * * [the concept of reasonable doubt] that we expect the practice to be discontinued. [Citation omitted.] *People v. Whittaker* (1970), 45 Ill.2d 491, 496.

■■ Defendant further claims error in the giving of a flight instruction wherein the jury was told that if the fact of flight was proven, it could be considered in determining defendant's guilt or innocence. One witness testified that the defendant walked "real fast" from the scene of the shooting whereas another testified that he ran from the scene. The defendant testified that he walked from the scene, got a beer and stood

in one place waiting "to see what was going to happen;" when nothing happened, he went home. While, on their initial visit, police did not find defendant at his apartment, he was discovered there, asleep, four hours after the shooting. He stated that he had been waiting for them. This is all the evidence on the subject and, on this basis, the flight instruction should not have been given. The concept of flight embodies more than just leaving the scene of the crime. The defendant must be attempting to avoid arrest or detention. (*People v. Herbert* (1935), 361 Ill. 64, 73-74; *People v. Burris* (1971), 49 Ill.2d 98, 107.) In *People v. Weisberg* (1947), 396 Ill. 412, 427, *cert.* den. 331 U.S. 826, the Illinois Supreme Court held that where a defendant has killed a man, allegedly in self-defense, leaves the scene and proceeds home, there is not sufficient evidence to justify a flight instruction. In the case at bar, not only did Zertuche arrive home a few hours after the killing, but he knew the police would have no difficulty locating his residence since he was personally acquainted with a detective sergeant who was the policeman present in the Guadalupano Club that evening. See, *People v. Brown* (1972), 3 Ill.App.3d 1022, 279 N.E.2d 765, 768; *People v. Johnson* (1966), 75 Ill.App.2d 231, 236-237.

■■ The prosecution emphasizes the fact that there was testimony that the defendant ran from the scene and cites, *People v. Agnello* (1961), 22 Ill.2d 352, 363; *People v. Dukes* (1957), 12 Ill.2d 334, 343; *People v. Hurley* (1968), 100 Ill.App.2d 167, 169-171. All of these cases are distinguishable on the basis that the defendants therein were running from pursuing police, indicating an attempt to evade arrest.

Having found merit to three of the errors assigned for review, we conclude that the defendant did not receive a fair trial. Therefore the judgment of the trial court is reversed and the cause remanded for a new trial.

Reversed and remanded.

SEIDENFELD, P. J., and ABRAHAMSON, J., concur.