Ross, Plaintiff in error, v. STATE, Defendant in error.

*No. State 78.   Submitted under sec. (Rule) 251.54 October 3, 1973.*
*—Decided November 12, 1973.*
(Also reported in 211 N. W. 2d 827.)

For the plaintiff in error the cause was submitted on the brief of *Patrick J. Devitt,* Legal Aid Society of Milwaukee.

For the defendant in error the cause was submitted on the brief of *Robert W. Warren,* attorney general, and *Robert D. Martinson,* assistant attorney general.

HEFFERNAN, J.  At the trial, Willie J. Ross, the defendant herein, recounted a series of prior altercations and encounters between him and the deceased, J. C. Williams.  On the evening in question, the defendant and his brother, David, were in the Blue Angel Lounge when the deceased and his companion, Roosevelt Taylor, entered.  Taylor attempted to cadge a drink from Ross, and when Ross refused to buy Taylor a drink, a scuffle ensued.  Willie Ross testified that, at this point, he walked to the other end of the bar to go to the cigarette machine.  Willie Ross testified that, when he approached within about five feet of Williams, Williams spun on his stool and slapped a pistol in Ross' face, and Ross heard a click, whereupon Ross drew his gun from his pocket, cocked his automatic, and shot Williams.  Under cross-examination Willie Ross estimated that five or six seconds elapsed between the first click he heard and the click he heard when he cocked his own weapon.  Ross' brother, David, also testified in respect to this time interval, and he stated that the time between clicks was two or three seconds.

After Williams slumped to the floor, Willie Ross took Williams' gun.  Willie Ross remained in the bar until the police arrived.  He explained he did not run, "Because I didn't think I did anything wrong, I was just protecting myself."

After the shooting, two weapons were on the bar, a .25-caliber automatic that belonged to Willie Ross and a .22-caliber revolver. The .22-caliber revolver was one of two that had been purchased by Roosevelt Taylor on that very day. There was evidence to show that earlier in the day Taylor had showed J. C. Williams a handgun.

Both Willie Ross and his brother, David, testified that Williams had a gun in his left hand as Willie headed for the cigarette machine. The owner of the Blue Angel Lounge testified, however, that he saw no gun in Williams' left hand at the time he was shot. He could not see Williams' right hand. Another witness to the affray saw Williams reach for his pocket, but he was unable to say whether he withdrew anything from his pocket or whether he had anything in his hand.

After the shooting of Williams, the .22-caliber revolver was examined at the Wisconsin Crime Laboratory. A bullet was in the chamber, and an impression on the cartridge indicated that it had been struck by the firing pin. A test showed that the gun allegedly in the hands of Williams was a defective weapon. Test firing at the laboratory resulted in two misfires out of four. There was evidence to show that if Williams had attempted to shoot Ross, the weapon probably misfired.

The right to a self-defense instruction was not disputed, and that instruction was given. Defense counsel also asked for an instruction on manslaughter under sec. 940.05 (2), Stats.—causing the death of another unnecessarily in the exercise of self-defense. The state contends the trial judge properly refused to give the manslaughter instruction because, if the evidence was construed by the jury to show that Williams pointed a gun at Ross and that gun misfired, Ross would be entitled under the doctrine of self-defense to protect himself and to shoot Williams. If Williams, however, did not have a gun, Ross would have no right to a manslaughter instruction. This latter argument is undoubtedly correct, but there

was evidence, though disputed, that Williams did have a gun in his hand pointed at Willie Ross. The state points out, however, that if five or six seconds elapsed between the misfire of Williams' gun and the firing of the shot by Ross, "the defendant would have had sufficient time to take other evasive or less drastic means of protecting himself." As we view the record, it is precisely that latter eventuality that required the submission of the manslaughter instruction.

The remarks of the trial judge given in explanation of his ruling at the hearing on the post-trial motions apparently are the genesis of the state's position. The trial judge stated that the statute itself, sec. 940.05 (2), Stats., was probably defective in that, if a defendant has the right to kill in self-defense, there is a complete defense and there is no room for a manslaughter instruction. The trial judge said:

"If the defendant is entitled to self-defense anything he does along such fine line of privilege, he is completely privileged and it exonerates him, whereas that one does not [manslaughter]—it mitigates; and if there is a killing that is not so privileged then, of course, the jury should be instructed definitely that unless his actions are consistent with the law covering self-defense and the court's instructions therein, then it shouldn't be 'watered down' by permitting mitigating circumstances of this kind to interfere, if there is not a bona fide self-defense privilege.

"I am unable to understand the logic or the fairness of such mitigating type of verdict. It's either self-defense and he's exonerated, or it's not self-defense and it's not a privilege.

"I rejected it then and I reject the argument now."

Accordingly, it appears that the trial judge took the position that, if the evidence in one view was probative of murder and also from another view indicated that the defendant had the right of self-defense, the jury's only alternatives were murder or complete privilege. While

there is commendable logic in that position, the accepted rule of modern law as recognized by our legislature, and by courts generally, is to the contrary. The additional alternative of manslaughter has been recognized for the last five hundred years in Anglo-Saxon jurisprudence. Moreland, *The Law of Homicide*, page 91, states:

"Self-defense, itself, was an old doctrine stemming from as far back as the thirteenth century. But under the doctrine of self-defense the accused was completely excused or else it was murder. It was not until manslaughter was introduced into the law with the passage of the series of statutes in the latter part of the fifteenth and the first part of the sixteenth centuries that any change in the alternative nature of the self-defense rule was effected."

Out of these early statutes arose the privilege of the imperfect right of self-defense. The doctrine of imperfect self-defense is set forth in sec. 940.05 (2), Stats., and is denominated as a type of manslaughter. It is explained for the purposes of instructing a jury on a manslaughter charge in Wis J I—Criminal, Part II, 1140, an instruction which was approved in *Mitchell v. State* (1970), 47 Wis. 2d 695, 177 N. W. 2d 833. Sec. 940.05 (2) defines manslaughter as the killing of another human being "Unnecessarily, in the exercise of his privilege of self-defense . . . ." The elements of the privilege of self-defense are set forth in Wis J I—Criminal, Part I, 800. The jury was properly instructed in accordance with these elements. Basically, there is a right to use force against another to prevent what the actor reasonably believes to be an unlawful interference with his person. He may, however, intentionally use only such force as he reasonably believes is necessary to prevent the interference. It is thus apparent that the privilege of self-defense may be a conditional one. If a defendant believes that intentional use of deadly force is necessary to protect himself and he uses deadly force

when he could reasonably believe that deadly force was necessary, there is a complete privilege. There may, however, be occasions where a defendant used deadly force when his belief, though his at the time, was unreasonable. Or there may be the circumstance where his belief that the necessity of self-defense was reasonable, but the deadly force used was unnecessary.

An instruction in respect to self-defense and an instruction in regard to manslaughter are not mutually exclusive. This question was definitively laid to rest by the United States Supreme Court at least as long ago as 1896 in the case of *Stevenson v. United States* (1896), 162 U. S. 313, 322, 16 Sup. Ct. 839, 40 L. Ed. 980. The supreme court in that case stated:

"The fact that the evidence might raise an issue as to whether any crime at all was committed [because of the privilege of self-defense] is not in the least inconsistent with a claim that it also raised an issue as to whether or not the plaintiff in error was guilty of manslaughter instead of murder. It might be argued to the jury, under both aspects, as an act of self defence and also as [manslaughter] . . . . The jury might reject the theory of self defence, as they might say the shot from the pistol of the deceased had already been fired and the plaintiff in error had not been harmed, and, therefore, firing back was unnecessary and was not an act of self defence."

The Illinois Court of Appeals in *People v. Zertuche* (1972), 5 Ill. App. 3d 303, 282 N. E. 2d 201, concluded that it was mandatory to give the manslaughter instruction whenever a self-defense instruction was given. The court pointed out that, in passing on the question of self-defense, the jury was required to determine the reasonableness of the belief and the reasonableness of the force used. Therefore, the court cogently pointed out, an issue in respect to the reasonableness of the force and the belief of the necessity of self-defense was raised by the self-defense instruction itself. The issue of man-

slaughter was raised by implication in respect to the duty of the jury in the event the belief was unreasonable or the force unnecessary. The court said at page 306:

"It seems inconsistent for the trial court to find there to be evidence from which the jury could conclude that defendant had a *reasonable* belief that he had to shoot Ochoa in order to prevent great bodily harm or death while, at the same time, it found there to be no evidence to show that the defendant had an *unreasonable* belief that he was justified in committing the same act. Under the circumstances of the instant case, we hold that the self-defense instruction having been given, the voluntary manslaughter instruction should also have been given."

The state argued that, if five or six seconds elapsed between the click of Williams' gun and the firing by Ross, there would have been time to take other action. However, if such were the belief of the jury, it would not be unreasonable for the jury further to conclude that Ross, having a belief that it was necessary to defend himself, resorted to excessive force and unnecessarily took the life of Williams in the exercise of his right to self-defense. This is manslaughter, and from one view of the evidence, even as viewed by the state, a jury, properly instructed, could have reached the conclusion that the killing was manslaughter—the consequence of using unnecessary force in the exercise of the privilege of self-defense—and not murder in either the first or second degree. Moreover, there was some evidence that the interval between the clicks was shorter than that testified to by Willie Ross. In *Mitchell v. State, supra,* this court approved a manslaughter instruction even though ten to forty seconds had elapsed between the defendant's first and second shots. Under the evidence, the requested manslaughter instruction was required and the failure to instruct on manslaughter was prejudicial error requiring a reversal of the verdict. *Brook v. State* (1963), 21 Wis. 2d 32, 40, 41, 123 N. W.

2d 535; *Weston v. State* (1965), 28 Wis. 2d 136, 143, 135 N. W. 2d 820.

Counsel for the defendant also attacks as unconstitutional, the standard approved by this court for a trial judge's determination of whether to instruct the jury on a lesser included offense. This court recently in *Day v. State* (1972), 55 Wis. 2d 756, 759, 201 N. W. 2d 42, citing *State v. Anderson* (1971), 51 Wis. 2d 557, 560, 187 N. W. 2d 335, and *State v. Bergenthal* (1970), 47 Wis. 2d 668, 675, 178 N. W. 2d 16, reiterated that standard:

"The test or standard for determining when lesser degrees of homicide than that charged are to be submitted to the jury has been clearly stated to be:

" 'To justify submitting lesser degrees of homicide than that charged in the information, there must be a reasonable ground in the evidence for acquittal on the greater charge and for conviction on the lesser charge. . . .'

" ' "The key word in the rule is 'reasonable.' The rule does not suggest some near automatic inclusion of all lesser but included offenses as additional options to a jury. Only if 'under a different, but reasonable view,' the evidence is sufficient to establish guilt of the lower degree and also leave a reasonable doubt as to some particular element included in the higher degree but not the lower, should the lesser crime also be submitted to the jury. . . ." ' "

Ross' counsel contends that the effect of this instruction results in the trial court's invasion of the province of the jury and that under this test a court violates basic due process when it weighs the evidence to determine the "reasonableness of the view." The contention is made that the function of the judge is limited to the determination of whether there is a scintilla of evidence which is probative of the lesser included offense, and that the question of whether it is reasonable to so view the evidence and whether the quantum of evidence is reasonable is a factual determination for the jury.

The test used by a court for determining whether to instruct on a lesser included offense, insofar as the nature of the evidence is concerned, is no different than that used generally by a court in determining whether any other kind of instruction should be given. *Belohlavek v. State* (1967), 34 Wis. 2d 176, 179, 148 N. W. 2d 665, said, "A trial court is not required to give a requested instruction unless the evidence reasonably requires it . . . ."

In civil cases, we have frequently pointed out that, where a jury's findings are questioned after the return of the verdict, it is the duty of the trial judge to uphold the verdict only if there is any credible evidence which, under a reasonable view, admits to an inference which supports the verdict. *Shoemaker v. Marc's Big Boy* (1971), 51 Wis. 2d 611, 187 N. W. 2d 815. It apparently is the contention of the defendant that, if there is an iota of evidence to support the lesser included offense, that offense must be submitted even though, in the judgment of the trial judge either prior to the verdict or after it, to so view the evidence would be completely unreasonable. We cannot conclude that due process requires the giving of instructions that are unreasonable in light of the facts elicited at trial.

To give an instruction on a lesser included offense when the commission of that lesser included offense is not reasonably shown by the evidence is no favor to a defendant. The inclusion of a doubtful lesser included offense is likely to result in a jury's compromise to the detriment of the defendant. Numerous cases arise in which the proper alternative for the jury is either the conviction on the major crime or a complete acquittal. To superfluously add to the verdict a lesser included offense may well in some cases result in the defendant being found guilty of that offense when a verdict of not guilty should have been returned.

The defendant relies on the United States Supreme Court case of *Stevenson v. United States, supra,* page 314, wherein appears the following statement:

"The evidence as to manslaughter need not be uncontradicted or in any way conclusive upon the question; so long as there is some evidence upon the subject, the proper weight to be given it is for the jury to determine. If there were *any evidence* which tended to show such a state of facts as might bring the crime within the grade of manslaughter, it then becomes a proper question for the jury to say whether the evidence were true and whether it showed that the crime was manslaughter instead of murder. It is difficult to think of a case of killing by shooting, where both men were armed and both in readiness to shoot, and where both did shoot, that the question would not arise for the jury to answer, whether the killing was murder or manslaughter, or pure act of self defence. The evidence might appear to the court to be simply overwhelming to show that the killing was in fact murder, and not manslaughter or an act performed in self defence, and yet, so long as there was some evidence relevant to the issue of manslaughter, the credibility and force of such evidence must be for the jury, and cannot be matter of law for the decision of the court." (Emphasis supplied.)

Despite defendant's interpretation of the language of *Stevenson,* a careful reading of the case does not lead to the conclusion that an instruction on the lesser included offense, manslaughter in this case, is mandated where the evidence is properly denominated as a mere scintilla and only an unreasonable view of the evidence would cause its inclusion in the jury verdict. *Stevenson,* on page 316, in further explication of this rule states, "If there were some *appreciable* evidence upon that subject, its proper weight and credibility were for the jury." (Emphasis supplied.)

Thus, even under *Stevenson,* the rule asserted as the proper one by the defendant herein is not given the un-

qualified meaning urged by counsel in this case. The evidence must be relevant and it must be appreciable. Perhaps our rule has been better stated by our court, although no differently, in *Hempton v. State* (1901), 111 Wis. 127, 141, 86 N. W. 596, wherein we said:

"*State v. Hammond,* 35 Wis. 315, *Pliemling v. State,* 46 Wis. 516, and *Terrill v. State,* 74 Wis. 278, are authority to the proposition that there must be *some evidence* pointing with *some reasonable degree* of definiteness to guilt in a particular degree to justify submission of a case to the jury upon the theory that verdict of guilty in such a degree is proper." (Emphasis supplied.)

The same case points out at page 140, that it is the duty of the trial court:

". . . to scrutinize the evidence with the greatest care, view it in the most favorable light it will *reasonably* admit of from the standpoint of the accused, and, whether requested or not, to submit to the jury every phase of criminal homicide to which it can be said reasonably to apply. We assume that the learned trial judge endeavored to do that and decided that there was nothing but *mere conjecture* upon which to base a verdict of manslaughter in either the first or fourth degree." (Emphasis supplied.)

Under these tests, the evidence is to be viewed in the most favorable light it will "reasonably admit of from the standpoint of the accused." This test does not call for a weighing of the evidence by the trial judge. He is merely obliged to examine the evidence to determine whether the proposed instruction is based upon mere conjecture and whether, if a verdict were returned on the lesser included offense, he would be obliged to set it aside. To instruct on the lesser included offense, speaking only to the evidentiary factors revealed at trial and not to the question of included elements, the evidence of the lesser included offense must be relevant and appreciable; and as considered most favorably to the defend-

ant, the inclusion of the instruction must not be unreasonable. The question basically is whether a jury giving the evidence full credence could reasonably return a verdict of guilt on the lesser included offense.

As properly administered under our rules, the standard used for determining whether a lesser included offense be submitted to the jury is fully consonant with the provisions of *Stevenson* and is not a denial of due process. In the instant case, if the test were properly applied, there is substantial relevant evidence which under a different but reasonable view would have required the submission of a manslaughter verdict to the jury. The error in the instant case is not with the rule which this court has adopted but the application of it.

*By the Court.*—Judgment and order reversed, with directions to grant defendant's motion for a new trial.

ROBERT W. HANSEN, J. *(dissenting).* Defense counsel argues that if there was evidence from which a jury could conclude that defendant had a *reasonable* belief he had to shoot the victim, it follows there must have been evidence to show that the defendant had an *unreasonable* belief he was justified in shooting the victim, which would require submission of manslaughter unnecessarily in the exercise of self-defense. (Sec. 940.05 (2), Stats.) This is to argue that, whenever murder and self-defense are submitted to a jury, manslaughter unnecessarily in the exercise of self-defense must also be submitted. Not always so, and not so in this particular case. Depending on their view of the evidence, and the weight and credibility they attached to the testimony of the various witnesses, if the jury believed the state's witnesses, the defendant walked over to an unarmed man in a tavern, shot and killed him. That would be murder, first or second degree. If they believed the defendant and de-

fense witnesses, when the defendant was within five feet of the victim, the victim spun on his bar stool, "slapped the pistol" in defendant's face, and the defendant heard a click. At that, the defendant drew his pistol and shot the victim. Defendant stated five or six seconds elapsed between the click of the victim's gun and a second click that defendant heard when he cocked his gun. That version has the defendant acting in self-defense. Under neither version of what happened does unnecessary force in the exercise of self-defense enter the picture. The strongest argument for defendant's position comes from this statement in the attorney general's written brief, to wit: "If five or six seconds elapsed . . . the defendant would have had sufficient time to take other evasive or less drastic means of protecting himself." If it is true that the defendant might and should have tried to reach for the victim's gun or urged him not to pull the trigger, then manslaughter by unnecessary force would be required to be submitted to the jury. The writer would suggest that the assistant attorney general who made the above observation never faced a loaded pistol in unfriendly hands or had five or six seconds to decide how to prevent his own immediate demise. If the victim had a gun and pointed it at the defendant, who was five feet away, with or without a click indicating that the gun had been cocked or had misfired, the writer would hold that the defendant was entitled to shoot the gun-pointing assailant. Five or six intervening seconds created no obligation or opportunity to do otherwise. This was an either-or situation. The defendant placed all of his eggs in the basket of having acted in self-defense in response to a loaded gun being pointed at him. When the jury, as trier of fact, rejected defendant's claim that the victim had carried and pointed a gun at defendant, no different but reasonable view of the evidence remained, except that the defendant walked over to an unarmed man on a barstool in a tavern and

shot him twice and killed him. That would and could only be murder, first or second degree. Not being self-defense at all, it could not be manslaughter by use of unnecessary force in the exercise of self-defense. The writer would affirm.