HARRIS, Plaintiff in error, v. STATE, Defendant in error.

No. State 74. *Argued April 10, 1975.—Decided May 6, 1975.*
(Also reported in 228 N. W. 2d 645.)

---

For the plaintiff in error there were briefs by *Howard B. Eisenberg,* state public defender, and *Ronald L. Brandt,* assistant state public defender, and oral argument by *Mr. Brandt.*

For the defendant in error the cause was argued by *William L. Gansner,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

WILKIE, C. J. The sole issue on review in this 1972 Milwaukee homicide is whether the jury instruction, as submitted by the trial court, should have included third-degree as well as first- and second-degree murder alternatives for the jury to consider. The trial court was entirely correct in rejecting the request for a third-degree murder verdict and we therefore affirm.

A shooting and robbery occurred on September 29, 1972, at a Milwaukee supermarket, during normal hours when the store was full of shoppers. Plaintiff in error

James Lee Harris (hereinafter defendant) and two companions entered the store. Harris walked up to the cashier's cage at the front, pointed a gun at the head of the store manager, Dennis Brandt, inside the cage and said "Don't move, this is it." After one of his companions, also armed, removed money from the cage, defendant himself entered it and demanded that rolls of coins be placed in his pockets. Then defendant began walking toward the exit door, head turned toward the cashier's cage. At some point before reaching the door he encountered the victim, Mark Raguse, an eighteen-year-old bagger employed by the supermarket, who had just entered, apparently unaware of the robbery in progress. Defendant drew within a foot of Raguse before noticing him, then fired the revolver once directly into Raguse's forehead just above the middle of the left eyebrow, from close range, leaving a powder burn on his face. The bullet lodged in the victim's brain and caused his death.

None of the witnesses, including defendant, claimed Raguse made any overt or offensive moves in defendant's direction. Defendant testified, however, that when he saw Raguse so close he panicked, thought he would be grabbed and tried to hit him in the side of the head with the barrel of the revolver. The victim, according to the defendant, turned to avoid the blow, causing the gun to strike his forehead. Harris said he heard the gun discharge but did not know he had shot anyone. He said the discharge was accidental and denied any intent to kill. He said he never broke stride while walking quickly out of the store. When he testified, defendant first maintained that both he and the victim were in the exit aisle of the store at the time of the shooting but later admitted that the victim "could have been" in the entrance aisle, separated from him by a railing. Other eyewitnesses testified that Raguse had, in fact, been in the entrance

aisle separated by a waist-high railing from defendant who was in the exit aisle. Several eyewitnesses also said that defendant's gun hand was raised about head high immediately after the shooting, but no one observed defendant physically hit Raguse in the head with the gun as he claimed he did. Defendant and several other witnesses testified his gun was drawn and held in his right hand during the entire incident. Others testified that when he shot Raguse, defendant pulled the gun from his pocket.

Following a jury trial, the defendant was convicted of first-degree murder in violation of sec. 940.01, Stats. He had earlier pleaded guilty to armed robbery in violation of secs. 943.32 (1) (b), (2) and (3), and 939.05. Harris was sentenced to not more than twenty-five years' imprisonment for the armed robbery conviction and to a consecutive life sentence for the murder.

The general rule for determining when instructions on lesser degrees of homicide should be submitted to the jury is:

"To justify submitting lesser degrees of homicide than that charged in the information, there must be a reasonable ground in the evidence for acquittal on the greater charge and for conviction on the lesser charge." [1]

In *State v. Bergenthal* [2] we further said:

"The key word in the rule is 'reasonable.' The rule does not suggest some near automatic inclusion of all lesser but included offenses as additional options to a jury. Only if 'under a different, but reasonable view,' the evidence is sufficient to establish guilt of the lower degree and also leave a reasonable doubt as to some

[1] *State v. Anderson* (1971), 51 Wis. 2d 557, 560, 187 N. W. 2d 557, and cases cited therein. *See also: Day v. State* (1972), 55 Wis. 2d 756, 759, 201 N. W. 2d 42; *Ross v. State* (1973), 61 Wis. 2d 160, 169, 211 N. W. 2d 827.

[2] (1970), 47 Wis. 2d 668, 675, 178 N. W. 2d 16.

particular element included in the higher degree but not the lower, should the lesser crime also be submitted to the jury."

Our first consideration must be of the state's contention here that a defendant must show that the evidence reasonably viewed could lead to acquittal on both first- and second-degree murder. The defendant argues that he must make this showing only as to first-degree murder. We disagree and reaffirm our holding in *Wilson v. State*,[3] where this precise question was considered and where this court ruled directly contrary to the present defendant's position.

In *Wilson*, as here, defendant was charged with armed robbery and murder and the jury, instructed on both first- and second-degree murder, found murder in the first degree. On appeal the court rejected defendant's claim that a third-degree murder instruction was warranted. The court said that under a reasonable view of the evidence, even if the jury could have, if it so chose, acquitted defendant of first-degree murder, it could not reasonably have acquitted him of second-degree murder:

"We conclude that there being no reasonable ground in the evidence upon which the jury could have acquitted Wilson of second-degree murder, the trial court did not err in refusing to submit a verdict of third-degree murder to the jury." [4]

The defendant in the instant case asks that *Wilson* be overruled on this point on the ground that while third-degree is a lesser-included offense with respect to first-degree murder it is not such with respect to second-degree murder.

Defendant argues that third-degree murder, unlike second-degree murder, requires proof of the additional

---

[3] (1973), 59 Wis. 2d 269, 208 N. W. 2d 134.

[4] *Id.* at page 285.

element that the homicide was intrinsically connected with commission of a felony. Therefore he contends it is not a lesser-included offense under sec. 939.66 (1), Stats., which provides:

"**939.66 Conviction of included crime permitted.** Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following:

"(1) A crime which does not require proof of any fact in addition to those which must be proved for the crime charged; . . ."

However, the subsections of sec. 939.66 are alternative definitions of "included crime," and sub. (2) provides:

"(2) A crime which is a less serious type of criminal homicide than the one charged; . . ."

Thus for homicide it is irrelevant that a less serious type of homicide requires proof of an additional fact not required to be shown for the more serious type.

It is not inconsistent with sec. 939.66 (2), Stats., to require, as in *Wilson,* a defendant to show reasonable doubt as to all greater degrees of homicide on which the court plans to instruct the jury, before defendant may secure an instruction on the next lesser degree. Defendant does not contest this as a general rule, but argues that in this case, third-degree murder would be a more serious, rather than less serious type of homicide than second degree. Defendant points out correctly that the maximum penalty for second-degree murder is twenty-five years' imprisonment, while for third-degree murder defendant could receive a maximum of forty-five years: The fifteen-year penalty specified in sec. 940.03 is in addition to the thirty-year maximum penalty for the underlying felony, armed robbery, specified in sec. 943.32 (2). Herein, however, lies the answer to defendant's contentions. This court has held that where a defendant is convicted of

third-degree murder the jury in effect finds defendant guilty of the underlying felony as well as the additional element of causing death even though only one verdict is returned and one conviction recorded.[5] The maximum penalty embodied in sec. 940.03 solely attributable to the criminal homicide is fifteen years, making this criminal homicide of "a less serious type" than second-degree murder.[6] Moreover, it must be pointed out that second-, unlike third-degree murder, carries a five-year minimum penalty. Finally, if defendant had been convicted of both second-degree murder and armed robbery, a combination comparable to the hybrid crime of third-degree murder, he could have received a sentence of up to fifty-five years, versus the forty-five year maximum for third degree.

Thus we conclude that the rule expressed in *Wilson* should not be overruled and that to show entitlement to a third-degree murder instruction defendant must first show reasonable doubt under the evidence as to both first- and second-degree murder.

*First-degree murder.* If defendant's testimony had been believed, as it evidently was not, the jury could have found that defendant lacked the specific intent to kill Mark Raguse. He said he did not see the victim until they were very close together and that he then panicked and tried to hit Raguse with the gun to push him away

---

[5] *State v. Carlson* (1958), 5 Wis. 2d 595, 608, 93 N. W. 2d 354 ("the verdict of guilty of third-degree murder in effect found the defendant guilty of arson and of the additional element of causing the death").

[6] *See: Ostrowski v. Burke* (7th Cir. 1968), 402 Fed. 2d 377, 379, where the court said the conduct proscribed by sec. 940.03, Stats. (third-degree murder) was sometimes "more reprehensible" than that proscribed by sec. 940.02 (second-degree murder). However, the "conduct" referred to in sec. 940.03 includes both criminal homicide and a felony, and the criminal homicide component of sec. 940.03 is less reprehensible than the criminal homicide defined in sec. 940.02.

when the gun went off. Defendant's testimony that he did not see Raguse until the two were very close together was corroborated by an eyewitness, and the trial court itself commented that the jury had a right to believe, if it so chose, defendant's testimony that he lacked intent to kill.

Thus, we conclude that under one reasonable view of the evidence the jury could have ruled against first-degree murder.

*Second-degree murder.* However, we conclude that reasonably viewing the evidence a jury could not acquit defendant of second-degree murder. Defendant and at least one of his companions were armed and they robbed the grocery store full of shoppers in broad daylight. Defendant said he brought the gun "to scare" and to "get cooperation." He admitted that the gun was loaded so that it would fire if he had to use it. He pointed the gun directly at the head of the store's manager and said "Don't move, this is it." As he was leaving he also pointed the gun at the head of the victim, Mark Raguse, but this time he fired. While defendant's contention that he panicked could negative the element of intent necessary to sustain a first-degree murder conviction, it does not pertain to second-degree murder. It cannot be disputed that assault with a deadly weapon is "conduct imminently dangerous to another," and based upon defendant's own testimony, we conclude he acted with "a depraved mind, regardless of human life."

The public defender argues that "The act of turning around, being startled by the presence of the victim, and attempting to ward him off with his gun carrying hand in no way demonstrates . . . a depraved mind." The public defender completely overlooks, however, two crucially important facts. First, defendant himself admits he intentionally raised the gun to the victim's head. Second, defendant pulled the trigger. Neither of these actions was

involuntary or done in the course of a struggle with the victim. Defendant said he was afraid of being grabbed, but no evidence suggests the victim did so or that any scuffle took place between the two. Indeed, defendant admitted that in walking out of the store and shooting Mark Raguse he never broke stride and never even looked back to see his victim fall to the ground. These facts conclusively establish that defendant acted with a "depraved mind, regardless of human life." At the most, all defendant's testimony shows, if believed by the jury as it evidently was not, is that he may not have had the specific intent to kill requisite to a first-degree murder conviction. However, second-degree murder has been defined as first-degree murder without the design to effect death,[7] and we conclude that reasonably viewed the evidence reveals no basis for acquittal of second-degree murder here.

Because acquittal of second-degree murder would not have been reasonably possible, defendant was not entitled to a third-degree murder instruction. Thus it is unnecessary to consider whether conviction of this lesser offense would be possible.

*By the Court.*—Judgment and order affirmed.

[7] *State v. Parker* (1972), 55 Wis. 2d 131, 141, 197 N. W. 2d 742; *Zenou v. State* (1958), 4 Wis. 2d 655, 668, 91 N. W. 2d 208.