THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* J. D. YOUNG, Defendant-Appellant.

First District (4th Division)    No. 61802

Opinion filed March 24, 1976.

Robert J. Cooley, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Linda Ann Miller, and Eugene J. Rudnik, Jr., of counsel), for the People.

Mr. JUSTICE ADESKO delivered the opinion of the court:

Defendant was tried before a jury, convicted of murdering James Brown, and sentenced to a term of 14 to 42 years' imprisonment. On appeal he contends that the trial court committed reversible error in refusing to give a voluntary manslaughter instruction when evidence elicited at trial supported such an instruction.

During the night of October 9, 1971, and the early morning hours of October 10, 1971, James Brown, his ex-wife Margaret Stewart, Mr. and Mrs. Franklin, and Mr. and Mrs. Martin, celebrated the birthday of Mr. Martin at a Chicago lounge. They partied between 10 p.m. and 2:00 to 3:15 a.m. All consumed alcoholic beverages, Brown drinking beer and whiskey. Upon leaving the lounge, they drove to Brown's apartment in three cars. Brown and the Franklins parked on the one-way residential street, and Brown began removing rubbish to allow the Martins to park their car.

Defendant arrived in his taxi-cab and found his way blocked by the Martin car. He honked his horn and yelled for Martin to move his car, whereupon Brown told defendant to wait until the parking space was cleared. Defendant testified that Brown cursed at him, picked up a "two by four," and started walking toward him. Mr. Martin testified that Brown had "a whole arm full of two by sixes." Defendant further testified that he then saw Franklin coming toward him with his hand in his jacket and told him not to "come out with that you got." The evidence appears to reveal that defendant then stepped from his cab and fired a gunshot into the air. Brown finished clearing away the rubbish, picked up his jacket, and walked toward his apartment. Margaret Stewart, who stood near the gate as Brown walked through, testified that defendant ran behind Brown and shot him. The Franklins and Martins corroborated Stewart's testimony

though their view was partially blocked by hedges. Defendant testified that Brown cursed at him, told him to "wait until I get back," picked up his coat, and quickly "whirled." Fearing a "gun play," he then shot Brown.

Dr. Kearns, the pathologist who examined the body of James Brown, determined death to have been caused by a bullet wound to the head. The bullet had entered the deceased through the front of his forehead.

The trial court found sufficient evidence to give the jury an instruction on self-defense (IPI-Criminal 24.06), but refused to give the jury defendant's instruction on voluntary manslaughter (IPI-Criminal 7.05).

■■ When a manslaughter instruction is requested in homicide cases, an instruction defining that crime should be given if there is evidence in the record which, if believed by the jury, would reduce the crime to manslaughter. (*People v. Joyner* (1972), 50 Ill. 2d 302, 278 N.E.2d 756.) *Joyner* distinguished a justified killing under self-defense, where the belief that the use of force, if necessary, is reasonable under the circumstances, from an unjustified killing, amounting to voluntary manslaughter, where the belief is unreasonable. In *People v. Dortch* (1974), 20 Ill. App. 3d 911, 314 N.E.2d 324, the trial court was reversed when a self-defense instruction, but no voluntary manslaughter instruction, was given to the jury. Furthermore, *People v. Zertuche* (1972), 5 Ill. App. 3d 303, 282 N.E.2d 201, found it necessary to give a voluntary manslaughter instruction as to the defendant's unreasonable belief once the self-defense instruction had been given.

■■ The State, in the instant case, contends there was no evidence to support either a self-defense or a voluntary manslaughter instruction. The totality of circumstances causes us to hold to the contrary. Prosecution witnesses had consumed alcoholic beverages over a period of approximately four hours. Mr. Martin corroborated defendant's testimony that Brown had come toward him with a "two by four." The pathologist corroborated defendant's testimony that Brown was facing defendant when he was shot. The trial court thus found sufficient evidence to warrant a self-defense instruction. We conclude there is evidence in the record which, if believed by the jury, would reduce the crime to manslaughter. The trial court erred in refusing to give the jury defendant's requested instruction on voluntary manslaughter. Therefore, the judgment of the trial court is reversed and the cause remanded for a new trial.

Reversed and remanded.

JOHNSON, P. J., and DIERINGER, J., concur.