THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JACK CANNON SIMPSON, Defendant-Appellant.

Fourth District   No. 12379

Opinion filed March 3, 1978.

Richard J. Wilson and Daniel D. Yuhas, both of State Appellate Defender's Office, of Springfield, for appellant.

C. Joseph Cavanaugh, State's Attorney, of Springfield (Robert C. Perry, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE WEBBER delivered the opinion of the court:

This case comes to us on remandment from the supreme court to consider issues raised but not reached in our original opinion.

The cause was tried in the circuit court of Sangamon County with a jury verdict of guilty of murder reached on April 2, 1973. It was then appealed to this court which reversed and remanded. (*People v. Simpson* (1976), 39 Ill. App. 3d 661, 350 N.E.2d 517.) It was then further appealed to the supreme court which reversed this court and remanded to us. *People v. Simpson* (1977), 68 Ill. 2d 276, 369 N.E.2d 1248.

The facts are fully set forth in our prior opinion and will not be reiterated here except as may be necessary for clarity. The prior appeal raised four issues which disposition and status is as follows:

(1) Error by the trial court in the admission of testimony by the defendant's wife concerning the surrounding circumstances of a conversation with him on the morning following the homicide. This court held that it was not error and the supreme court made no reference to it in its opinion. We therefore consider that matter closed.

(2) Error by the trial court in the admission of testimony of an assistant State's Attorney concerning a statement made by the defendant to his wife during a confrontation between them while the defendant was being interrogated by the authorities. This court held that to be error and the supreme court reversed this court. We likewise consider that matter now closed.

(3) Error by the trial court in refusing jury instructions and verdict forms on the lesser included offenses of voluntary manslaughter and involuntary manslaughter. This was not reached in our prior opinion for the reason set forth therein and is now before us pursuant to the supreme court's mandate.

(4) Excessiveness of sentence which was likewise not reached in our prior opinion and is now before us under the supreme court's mandate.

Before proceeding to the principal issues involved in this phase of the case, we should dispose of one detail yet unresolved in issue No. 2. It had been argued by defendant that if the statement were admissible, it went only to his credibility and he was entitled to a limiting instruction to that effect. We believe that the opinion of the supreme court disposes of this:

"We deem it clear that Kasten's [assistant State's Attorney] report of the wife's police station statement was admissible to explain the bare words of defendant's public admission, 'Yes.' Her statement gave meaning to the defendant's otherwise incomprehensible statement above, and merely revealed what the defendant thereby

admitted to having said." (*Simpson*, 68 Ill. 2d 276, 282, 369 N.E.2d 1248, 1252.)

The supreme court has thus characterized defendant's statement as an admission. The jury received instruction on admissions and the weight to be given to them and therefore no further instruction was needed or proper.

We turn next to the more difficult and troublesome issue of the instructions. Defendant was indicted and tried on five counts of murder and two counts of voluntary manslaughter. At the close of all of the evidence, which was in reality the close of the People's evidence since the defendant did not testify nor present any other evidence, the People moved to dismiss the manslaughter counts. Defendant objected but was overruled and the counts dismissed. At the instruction conference defense counsel requested instructions on both voluntary and involuntary manslaughter and these were denied. The jury was instructed on murder only and returned a guilty verdict as above described.

Defendant's theory is that, even admitting the shooting as he did, there was no direct evidence of what transpired at the time of it and immediately beforehand; that there was testimony of a gash on his nose and abrasions on his knuckles, all of which looked fresh within a few hours after the event; that the autopsy surgeon testified as to wounds and abrasions on the body of the victim, "the majority" of which occurred after death; that there was testimony of a quarrel, or quarrels, between him and the victim earlier in the evening; that the gash on his nose was not observed by a witness who saw him prior to the homicide earlier in the evening. Defendant's argument then is that the evidence is just as consonant with a violent quarrel at the time of the shooting, and hence manslaughter, as it is with a deliberate killing, which is murder, and therefore he was entitled to instructions on the lesser included offenses. We do not agree.

■■ The governing rule, like many rules of law, is simple and succinct of statement, but complex and ramified in its application. Reduced to a few words, it may be stated as follows: If there be some evidence in the record which, if believed by a jury, would reduce the crime to a lesser included offense, the defendant has a right to an instruction and form of verdict defining the lesser included offense. *People v. Joyner* (1972), 50 Ill. 2d 302, 306, 278 N.E.2d 756; *People v. Taylor* (1967), 36 Ill. 2d 483, 489, 224 N.E.2d 266; *People v. Latimer* (1966), 35 Ill. 2d 178, 182, 220 N.E.2d 314.

Our own courts, as well as those of other jurisdictions, have had difficulty in defining the quality of the evidence required. Illinois courts have spoken of a "raises the issue" test, an "introduces some evidence"

test, and a "jury could reasonably find" test. Massachusetts has stated a "rational basis" test (*Commonwealth v. Hogg* (1974), 365 Mass. 290, 311 N.E.2d 63). Wisconsin follows a "relevant and appreciable" test (*Ross v. State* (1973), 61 Wis. 2d 160, 211 N.W.2d 827). Other jurisdictions use their own variations. These examples are cited only to demonstrate that no firm concensus on the matter has yet been arrived at, but all the authorities are unanimous in holding that some evidence must appear in the record as the predicate for an instruction on a lesser included offense. The Wisconsin Supreme Court put the matter tersely in *Clark v. State* (1974), 62 Wis. 2d 194, 205, 214 N.W.2d 450, 456: "The law is well established that in order for a lesser-offense instruction to be given, it must appear upon a reasonable view of the evidence that it is doubtful that the greater offense has been committed. The defendant has no absolute right to demand that the jury be instructed on the elements of a lesser included crime."

The next question to be resolved is whence comes the evidence? The authorities are again unanimous in saying that it comes from an examination of "the record." (See, for example, *People v. Joyner* (1972), 50 Ill. 2d 302, 278 N.E.2d 756; *People v. Boisvert* (1975), 27 Ill. App. 3d 35, 325 N.E.2d 644.) The obvious implication in this rule is that the totality of the evidence is to be considered, regardless of its source. This brings us to the unique feature of the instant case: There is nothing in this record except People's evidence. The defendant did not testify and did not present any witnesses on his own behalf. We have examined each case cited to us by the defendant and in each one the defendant testified and gave his version of the homicide. And the same is generally true of the cases cited to us by the People: *People v. Boothe* (1972), 7 Ill. App. 3d 401, 287 N.E.2d 289; *People v. Zertuche* (1972), 5 Ill. App. 3d 303, 282 N.E.2d 201; *People v. Bembroy* (1972), 4 Ill. App. 3d 522, 281 N.E.2d 389; *People v. Scalisi* (1926), 324 Ill. 131, 154 N.E. 715; *People v. Dewey* (1969), 42 Ill. 2d 148, 246 N.E.2d 232; *People v. Burnett* (1963), 27 Ill. 2d 510, 190 N.E.2d 338; *People v. Latimer* (1966), 35 Ill. 2d 178, 220 N.E.2d 314; all are fair examples taken from the respective briefs and in each case defendant himself testified. *People v. Guthrie* (1970), 123 Ill. App. 2d 407, 258 N.E.2d 802, is an example of a situation wherein defendant's testimony in a co-defendant's trial was read into the record.

The result then is that by his testimony a defendant has created conflicting testimony on a disputed fact and presented his theory of the case. In such a situation it is nearly always mandatory on the trial court to give the lesser-included instruction, unless the theory of defense totally excludes it. In *People v. Bembroy* (1972), 4 Ill. App. 3d 522, 525, 281 N.E.2d 389, 392, the court said that the instruction must be given "even

though the theory of the defense at trial is inconsistent with the possibility that the defendant is guilty of the lesser offense."

Such is not the situation facing us in the case at bar. Neither the trial court nor we have the benefit of defendant's version of the events at and immediately preceding the homicide. We do not wish to be understood in any fashion as saying that it is incumbent on the defendant to testify. His fifth amendment right of silence must always stand unimpaired. The question posed in the instant case which was not present in any of the prior cases is whether the conflict in the evidence and defendant's theory can be supplied by inference from the People's evidence. We think not.

One of the most fundamental rules of trial practice, so fundamental that citation of authority seems almost superfluous, is that there must be an evidentiary basis for an instruction other than the general cautionaries. For example, in *People v. Izzo* (1958), 14 Ill. 2d 203, 151 N.E.2d 329, 89 A.L.R.2d 187, *cert. denied* (1960), 362 U.S. 403, 4 L. Ed. 2d 864, 80 S. Ct. 812, defendant was denied a manslaughter instruction even though there was evidence of drinking and bad blood between defendant and the victim. The court held there was no evidence of intoxication nor the kind of provocation that would reduce the quality of the offense. The matter was also considered by the Arizona Supreme Court in *State v. Contreras* (1971), 107 Ariz. 68, 481 P.2d 861. That case was a prosecution for murder, verdict of manslaughter, and contention on appeal that there should have been a further instruction on assault, since the victim did not die until three days later, perhaps from other causes. The court upheld the refusal of the instruction on assault saying, "No evidence was introduced at defendant's trial which would show that death resulted from any cause other than as stated by Dr. Jarvis [autopsy surgeon]. Mere speculation alone, without corroboration, is not sufficient." 107 Ariz. 68, 70, 481 P.2d 861, 863.

We agree with the Arizona court that speculation will not support an instruction. Defendant argues, however, that the murder instruction, particularly with reference to that matter of intent, must also be speculation in the absence of direct evidence. We disagree.

In a murder prosecution the State must prove first the killing and then one or more of the several states of mind detailed in section 9—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 9—1(a)(1) and (2)). It is now beyond dispute that the state of mind, or intent, in a murder case may be inferred from the acts themselves. In *People v. Koshiol* (1970), 45 Ill. 2d 573, 578, 262 N.E.2d 446, 449, *cert. denied* (1971), 401 U.S. 978, 28 L. Ed. 2d 329, 91 S. Ct. 1209, the supreme court said:

"As to the question of the sufficiency of proof of specific intent the law is well settled that intent is a state of mind, and, if not

admitted, can be shown by surrounding circumstances, and intent to take a life may be inferred from the character of the assault, the use of a deadly weapon and other circumstances. [Citation.] Also, 'Since every sane man is presumed to intend all the natural and probable consequences flowing from his own deliberate act, it follows that if one wilfully does an act, the direct and natural tendency of which is to destroy another's life, the natural and irresistible conclusion, in the absence of qualifying facts, is that the destruction of such other person's life was intended.' (*People v. Coolidge*, 26 Ill. 2d 533, 537.)"

■■ On the other hand, the type of voluntary manslaughter in issue here (Ill. Rev. Stat. 1975, ch. 38, par. 9—2) requires proof of one additional objective fact, *i.e.*, sudden and intense passion resulting from serious provocation, in order to reduce the quality of the required intent from murder. Thus it is that while the subjective intent of the defendant may be derived inferentially in both murder and manslaughter, the "serious provocation" requirement, which is an additional element in manslaughter, is not susceptible of proof by inference alone. This difference is well illustrated in *People v. Acevedo* (1976), 40 Ill. App. 3d 105, 351 N.E.2d 359. In that case the defendant was fighting with one brother while two other individuals were fighting with another brother. Both brothers were killed from gunfire initiated by the defendant, all in the same melee. The court held that there was a rational basis for holding the defendant to a conviction of murder of the one brother, but voluntary manslaughter of the other. Except for the fight, an objective fact, defendant's subjective intent might have been held the same as to each brother.

We therefore hold that while a murder instruction is proper when the defendant's intent must be determined by inference, such is not true of a voluntary manslaughter instruction, and in order to justify the latter, there must be objective evidence of serious provocation.

Tested by these standards, the evidence in this case falls far short. The jury could only speculate as to the source of the wounds on defendant's body. There was evidence that he had dragged the victim's body some distance from an automobile to a culvert where it was found and that the area was rough and filled with underbrush. This, taken with the autopsy report as to the victim's post mortem wounds, lays a basis for a theory that his wounds were received in that fashion. Nor is there anything but speculation as to what happened to him during the time between the homicide and his arrival at his wife's trailer. Something could have happened during this interval to cause the gash and the abrasions. We could go on endlessly generating alternative theories, but to no end.

■■ Tested by any of the standards mentioned above, the evidence of

serious provocation was insufficient as the basis for an instruction on voluntary manslaughter and the trial court was correct in refusing it.

■■ All that has been said regarding voluntary manslaughter applies with equal force to the question of involuntary manslaughter instructions which were also requested by defendant. The essence of involuntary manslaughter is recklessness (Ill. Rev. Stat. 1975, ch. 38, par. 9—3(a)), and in this record there is even less evidence of recklessness than of serious provocation. All of the defendant's actions, secreting the body, burning his clothing, and destroying the personal property of the victim bespeak intentional, rather than reckless, actions. Furthermore, the single bullet wound, on a straight trajectory through the head, argues forcibly for intentional action. There was no error in the refusal of involuntary manslaughter instructions.

■■ Two final contentions of defendant concerning the instructions merit some brief comment. First, defendant quotes from *Stevenson v. United States* (1896), 162 U.S. 313, 40 L. Ed. 980, 16 S. Ct. 839. We interpret this as a constitutional due process argument. The Wisconsin Supreme Court had the same question before it in *Ross v. State*, and said:

> "As properly administered under our rules, the standard used for determining whether a lesser included offense be submitted to the jury is fully consonant with the provisions of *Stevenson* and is not a denial of due process." (61 Wis. 2d 160, 173, 211 N.W.2d 827, 833.)

As indicated above, Wisconsin follows the relevant and appreciable test. The more recent Illinois cases tend toward the "jury could reasonably find" test. We find the latter to be in all material ways the same as the Wisconsin rule, and with the Wisconsin court find no denial of due process in the administration of our rule.

Second, we interpret much of defendant's argument to say by implication that under any and all circumstances the defendant is entitled to any benefit allowed by law and the People are not. Such is not the rule. An example is found in the recent cases of *People v. Gordon* (1976), 64 Ill. 2d 166, 355 N.E.2d 3; *People v. Brooks* (1976), 65 Ill. 2d 343, 357 N.E.2d 1169; and *People v. Henderson* (1978), 71 Ill. 2d 53, 373 N.E.2d 1338, wherein the supreme court held that when a defendant's act is in violation of more than one statute, and each statute provides for different defenses or requires different proof, the State has the discretion to determine under which, including the one with the greater penalty, the defendant will be prosecuted. No defendant has an absolute right to pick and choose his prosecution and his punishment.

■■ The third, and last, issue not reached in our prior opinion was that of excessiveness of sentence. Defendant was sentenced to 25 to 75 years' imprisonment. He does not argue that the trial court abused its discretion

in imposing such a sentence but only that the minimum should be lowered to 14 years in order to accomodate his rehabilitation. In *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882, the supreme court admonished the appellate courts not to modify sentences absent an abuse of discretion by the trial court. In the more recent case of *People v. Waud* (1977), 69 Ill. 2d 588, 373 N.E.2d 1, the court indicated that rehabilitation and deterrence should have equal weight in fixing punishment and that the prime responsibility for striking a balance between the two rested with the trial court.

Based on *Perruquet* and *Waud*, we find no reason to alter the sentence imposed by the trial court.

Accordingly, the conviction and sentence are affirmed.

Affirmed.

GREEN, P. J., and MILLS, J., concur.