Beilfuss, J.
 

 The defendant contends (1) that the court’s instructions to the jury on self-defense and evidence of previous good character were confusing and prejudicial; (2) that the verdict was contrary to the law and contrary to the evidence, and that a new trial should be granted in the interests of justice; (3) that defendant should be found not guilty by reason of being insane; and (4) that a new trial should be granted in the interests of justice because the foreman of the jury should not have been allowed to remain on the jury.
 

 
 *663
 
 The defendant’s counsel, in the brief filed in her behalf, states:
 

 “The instructions were the general instructions used in cases in this kind. It is not the instructions of the Court in this particular case that we complain about, but it is the whole instructions in cases of this kind, that in our opinion do more to confuse the jury than to assist it.”
 

 The defendant was represented by competent counsel of long standing. The record, however, does not reveal a request for any specific instruction on any phase of the case except the oral request: “And I ask the court to instruct on the privilege of self defense and on insanity.” To which the court responded, “It will.”
 

 The brief and argument of counsel are directed to a complaint of the instructions on self-defense and good-character reputation.
 

 The instruction on self-defense given by the court was substantially the same as Wis J I — Criminal, Part I, 805, 810. These instructions are the product of painstaking effort of an eminently qualified committee of trial judges, lawyers, and legal scholars, designed to accurately state the law and afford a means of uniformity of instructions throughout the state. They are, as stated by counsel, “the general instructions used in cases of this kind.” These uniform instructions are not infallible. However, their content is readily known and if they are considered inaccurate or prejudicial they should be challenged by written requested instructions or at least objection made on the record at the time they are given so that if they are erroneous, correction can be made before the jury arrives at a verdict. In this instance neither a request for a specific instruction nor objection to the instruction as given appear in the record.
 

 
 *664
 
 We have examined the instruction as given and do not find it inconsistent with sec. 939.48 (1), Stats.,
 
 [1]
 
 nor otherwise erroneous.
 

 The portions of the instruction complained about qualify the privilege of self-defense to the standard of “what a person of ordinary intelligence and prudence would have done in the position of the defendant under the circumstances existing at the time of the alleged offense.”
 

 This instruction does direct the jury to apply the objective standard of the ordinary intelligent and prudent person. However, this standard is not that of an ordinary intelligent and prudent person under any circumstances but limited to one “in the position of the defendant under the circumstances existing at the time of the alleged offense.” In our opinion, this instruction gives the jury sufficient latitude to consider all of the motivating factors at the time and place. A lesser standard could justify a wanton and malicious attack beyond that necessary for self-defense.
 

 The instruction given on previous good character is challenged. It is the same as Wis J I — Criminal, Part I, 270,
 
 [2]
 
 and is almost verbatim the instruction approved in
 
 Niezorawski v. State
 
 (1907), 131 Wis. 166, 177, 111 N. W. 250.
 

 We conclude there was no error in the instructions given on self-defense and on previous good reputation.
 

 
 *665
 
 On appeal in criminal cases the test of sufficiency of the evidence is whether the “evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendant’s guilt beyond a reasonable doubt.”
 
 State v. Waters,
 
 ante, p. 148, 153, 135 N. W. (2d) 768, quoting from
 
 State v. Stevens
 
 (1965), 26 Wis. (2d) 451, 463, 132 N. W. (2d) 502.
 

 Sec. 940.02, Stats., defines second-degree murder as follows:
 

 “Whoever causes the death of another human being by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life, may be imprisoned not less than 5 nor more than 25 years.”
 

 The evidence clearly establishes that the death of George Kanzelberger was caused by a blow or blows to the head inflicted by the defendant by means of an Indian club. Historically, the Indian club was designed for this very purpose.
 

 The defendant’s defenses were twofold: (1) Self-defense, and (2) temporary insanity.
 

 These défenses were ably presented to the jury by counsel for defendant in the evidence adduced and argument to the jury. The jury rejected both of these defenses as they were entitled to do in their judgment under the proof before them.
 

 Her statements made to the police and to the neighbors shortly after the act, the instrument used, the violence of the attack as evidenced by the severity of the injury, and the lack of evidence of physical struggle in the cottage
 
 *666
 
 constitute sufficient evidence to warrant a jury finding of second-degree murder. It is apparent the jury did not believe the defendant intended to kill her husband but they did find, upon sufficient credible evidence, that she did cause his death by conduct imminently dangerous to another and evincing a depraved mind. We have stated that second-degree murder is first-degree murder without intent to kill.
 
 [3]
 
 The jury verdict of second-degree murder cannot be set aside under the facts of this case.
 

 The defendant urges that we re-examine and change the definition of insanity as it is used as a defense in criminal cases. The definition as given by the trial court in its instructions to the jury was taken from
 
 State v. Esser
 
 (1962), 16 Wis. (2d) 567, 599, 115 N. W. (2d) 505, and is as follows:
 

 “ ‘The term “insanity” in the law means such an abnormal condition of the mind, from any cause, as to render the defendant incapable of understanding the nature and quality of the alleged wrongful act, or incapable of distinguishing between right and wrong with respect to such act.’ ”
 

 The defendant does not contend that the instruction is an erroneous statement of the law but states the law should be changed.
 

 Dr. Belcher testified that when he examined the defendant a few days after the event she was suffering from a gross stress reaction, which is not a mental illness.
 

 Drs. Keane and Houfek testified that at the time of the event she was suffering from a mental illness described as acute disassociative reaction and that her act was the product of a mental disorder.
 

 All three doctors testified that she did have sufficient mental capacity to understand the nature and quality of her
 
 *667
 
 act and was capable of distinguishing right from wrong with respect to such act.
 

 Clearly, the jury could reject the defense of insanity by applying the
 
 Esser
 
 test to the medical testimony.
 

 This court has recently given thorough consideration to the proper definition to be adopted for the defense of insanity in the trial of persons charged with criminal acts. A reading of the opinions in
 
 Kwosek v. State
 
 (1960), 8 Wis. (2d) 640, 100 N. W. (2d) 339, and
 
 State v. Esser, supra,
 
 will readily convince the reader that the court has thoroughly reviewed and considered the several definitions of insanity proposed to or adopted by various courts of the country; and that the members of this court are not unanimous in their opinions as to the proper definition. While the personnel of this court has changed to some degree since the
 
 Kwosek
 
 and
 
 Esser
 
 decisions were announced, we are. not inclined to re-examine this problem upon the record before us. No suggestion of any kind was made to the trial court as to a change in the rule until after the verdict was returned. Nor are the arguments advanced by counsel on this appeal persuasive that a change should be made.
 

 If we are to re-examine the rule of
 
 Esser
 
 we deem it should be done only upon a proper record in the form of written request for instructions in the trial court and persuasive and compelling argument here.
 

 Our reluctance to further delve into this troubled legal issue is alluded to in our statement in
 
 Brook v. State, supra,
 
 page 47:
 

 “The state in oral argument requested that this court definitely declare that psychopaths fall without the pale of such ‘abnormal condition of the mind’ as to bring them within the definition of insanity set forth in the
 
 Esser Case.
 
 We do not deem it advisable to accede to this request because to do so might only further add to the confusion which already exists in this field of criminal law. Further it would
 
 *668
 
 freeze into the law a concept with which some psychiatrists now disagree, and in which there is considerable fluidity of scientific knowledge and opinion.
 

 “Essentially the insanity defense presents a moral issue to juries in criminal cases as to whether a particular defendant should be held criminally accountable for the offense with which he is charged. We feel that the rather-strict test of insanity now laid down in the
 
 Esser Case
 
 definition of insanity should not be further narrowed, and that juries should have some latitude in making this type of moral judgment.”
 

 The final assignment of error upon which a new trial is requested is that the foreman of the jury did not respond to a question at
 
 voir dire
 
 examination as to whether the prospective jurors knew the deceased George Kanzelberger.
 

 After the notice of appeal was filed, and shortly before oral argument, counsel for defendant obtained a written affidavit from one Lester Lonzo to the effect that the affiant, the foreman of the jury Oscar Eis, and George Kanzelberger had attended St. Luke’s Parochial School in Two Rivers, Wisconsin, in 1913 and 1914, and Oscar Eis knew George Kanzel-berger.
 

 The affidavit of a third person that two other persons knew each other because they attended the same school some fifty years ago does not in any way establish that the juror had any present recollection of the acquaintance if, in fact, it did exist. There is nothing to indicate that the juror had any association thereafter or any knowledge or experience with George Kanzelberger that could in any way affect his judgment for or against the defendant.
 

 The reference made by Lonzo in his affidavit is so remote as to time and lacking in essential detail as to be of negligible probative value and insufficient as a basis for finding error.
 

 A suggested proper procedure in challenges of this kind is to move for a new trial in the trial court and to petition the court, in its discretion, to subpoena the affiant and the
 
 *669
 
 juror to determine the fact by examination under oath in a supplementary proceeding.
 

 By the Court.
 
 — Judgment affirmed.
 

 [1]
 

 “A person is privileged to threaten or intentionally use force against another for the purpose of preventing or terminating what he reasonably believes to be an unlawful interference with his person by such other person. The actor may intentionally use only such force or threat thereof as he reasonably believes is necessary to prevent or terminate the interference. He may not intentionally use force which is intended or likely to cause death or great bodily harm unless he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself.”
 

 [2]
 

 “Testimony has been received regarding the reputation of the defendant for (truth and veracity) . . . (being peaceable and law-abiding) prior to the time when it is alleged he committed the offense charged.
 

 
 *665
 
 “Such evidence should be considered along with all the other evidence in the case, and if after such consideration you entertain any reasonable doubt as to the guilt of the defendant, you must acquit him.
 

 “But, if upon the whole evidence in the case, including the testimony as to the reputation of the defendant, you are satisfied of his guilt beyond a reasonable doubt, then it is immaterial what his reputation has heretofore been as to (truth and veracity) . . . (being peaceable and law-abiding).”
 

 [3]
 

 Brook v. State
 
 (1963), 21 Wis. (2d) 32, 43, 123 N. W. (2d) 535.