MITCHELL, Plaintiff in error, v. STATE, Defendant in error.

*No. State 165. Argued June 4, 1970.—Decided June 26, 1970.*
(Also reported in 177 N. W. 2d 833.)

698

For the plaintiff in error there was a brief and oral argument by *Gerald P. Boyle* of Milwaukee.

For the defendant in error the cause was argued by *Joseph E. Tesch,* assistant district attorney of Milwaukee county, with whom on the brief were *Robert W. Warren,* attorney general, and *E. Michael McCann,* district attorney.

BEILFUSS, J. Two issues are presented:

1. Were the court's instructions to the jury on manslaughter and self-defense confusing and prejudicial?

2. Is the evidence of self-defense so conclusive the court should have ordered judgment for the defendant notwithstanding the jury verdict?

The information charged the defendant with second-degree murder in the slaying of Donald Skenandore. Verdicts of guilty of second-degree murder, guilty of manslaughter and not guilty were submitted to the jury. It returned the verdict of guilty of manslaughter. As to both second-degree murder and manslaughter, it was the defendant's claim that he was not guilty because he was acting in self-defense. Instructions on second-degree murder, manslaughter and self-defense as they appear in Wisconsin Jury Instructions, Criminal, were given to the jury.

This court has said in several recent cases that it would consider the failure to timely object to jury instructions a waiver of any alleged defects in those instructions. *Curl v. State* (1968), 40 Wis. 2d 474, 480, 162 N. W. 2d 77; *State v. Halverson* (1966), 32 Wis. 2d 503, 145 N. W. 2d 739; *State v. Kanzelberger* (1965), 28 Wis. 2d

652, 137 N. W. 2d 419, certiorari denied, 385 U. S. 867, 87 Sup. Ct. 127, 17 L. Ed. 2d 93; and *Johns v. State* (1961), 14 Wis. 2d 119, 109 N. W. 2d 490. The duty incumbent upon trial lawyers seeking to challenge the uniform jury instructions was set forth in *State v. Kanzelberger, supra,* page 659:

"These instructions are the product of painstaking effort of an eminently qualified committee of trial judges, lawyers, and legal scholars, designed to accurately state the law and afford a means of uniformity of instructions throughout the state. They are, as stated by counsel, 'the general instructions used in cases of this kind.' These uniform instructions are not infallible. However, their content is readily known and if they are considered inaccurate or prejudicial they should be challenged by written requested instructions or at least objection made on the record at the time they are given so that if they are erroneous, correction can be made before the jury arrives at a verdict."

Additionally, it can be said that neither defendant personally, nor through his counsel, should be permitted to listen to jury instructions being presented to the jury which he or his counsel believe to be inaccurate or incorrect and await the return of the verdict and, if unfavorable, then complain as a matter of right.

Although we conclude that the defendant has waived his right to object to an instruction for the reasons set forth above, we will, in our discretion, reach the substance of his alleged error.

It is the position of the defendant that the manslaughter instruction and the self-defense instruction are confusing.

The statutes as they apply to this issue are sec. 940.05 (2) and sec. 939.48 (1), wherein it is provided:

"940.05 **Manslaughter.** Whoever causes the death of another human being under any of the following circumstances may be imprisoned not more than 10 years:

" . . .

"(2) Unnecessarily, in the exercise of his privilege of self-defense or defense of others or the privilege to prevent or terminate the commission of a felony."

"939.48 **Self-defense and defense of others.** (1) A person is privileged to threaten or intentionally use force against another for the purpose of preventing or terminating what he reasonably believes to be an unlawful interference with his person by such other person. The actor may intentionally use only such force or threat thereof as he reasonably believes is necessary to prevent or terminate the interference. He may not intentionally use force which is intended or likely to cause death or great bodily harm unless he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself."

The uniform jury instructions, which were followed almost verbatim by the trial court, implement the above statutory language, particularly in the terms of the actor's "reasonable belief" respecting the amount of force necessary for self-defense. The uniform instruction on self-defense by deadly force, Wis J I—Criminal, Part I, 805, provides in part:

"For the defendant's conduct to be privileged under the law of self-defense, the defendant must have reasonably believed that there was an actual or imminent unlawful interference with his person. This requires that he actually believed such interference to be unlawful. The fact that his belief may have been erroneous does not deprive the defendant of his privilege to use force in defense of his person if a person of ordinary intelligence and prudence under the same circumstances, would have believed such interference to be unlawful.

"In addition, for his conduct to be privileged under the law of self-defense, the defendant must have used no more force than he reasonably believed to be necessary to prevent or terminate the unlawful interference. In other words, not only must the defendant have actually believed that the amount of force used was necessary and not excessive, but also the amount of force used must be no more than a person of ordinary intelligence

and prudence would have believed necessary and not excessive under the same circumstances."

The identical definition of reasonableness is utilized in the instruction for manslaughter unnecessarily in the exercise of self-defense, Wis J I—Criminal, Part II, 1140, which provides in part:

"Third, the defendant must have killed . . . . believing that his act was necessary in self-defense but his belief was unreasonable under the circumstances. In other words he believed that his action was necessary in the exercise of his privilege of self-defense but actually his belief was unreasonable because a reasonable person would not have believed that he was privileged at all to use force under the circumstances or a reasonable person would not have used as much force as was used by the defendant. In determining whether the defendant's belief was reasonable, you must consider the question from the standpoint of the defendant at the time of his actions and not from the viewpoint of the jury now.

"The standard you must apply is what a person of ordinary intelligence and prudence would have done in the position of the defendant under the circumstances existing at the time of the alleged offense. In applying this standard, you must consider whether a reasonable person would have believed that he was privileged to act in self-defense and whether he would have believed that the amount of force used was proper under the circumstances."

In *State v. Kanzelberger, supra,* uniform instruction 805 on self-defense was examined and found not to be inconsistent with sec. 939.48 (1), Stats. (self-defense), nor otherwise erroneous. We stated therein, at page 660:

"The portions of the instruction complained about qualify the privilege of self-defense to the standard of 'what a person of ordinary intelligence and prudence would have done in the position of the defendant under the circumstances existing at the time of the alleged offense.'

"This instruction does direct the jury to apply the objective standard of the ordinary intelligent and prudent person. However, this standard is not that of an ordinary intelligent and prudent person under any circumstances but limited to one 'in the position of the defendant under the circumstances existing at the time of the alleged offense.' In our opinion, this instruction gives the jury sufficient latitude to consider all of the motivating factors at the time and place. A lesser standard could justify a wanton and malicious attack beyond that necessary for self-defense."

It is our belief the instructions as given by the trial court were not confusing and they are approved as a correct statement of the law.

The defendant argues that even if the court accepts the rule of reasonableness as set out in the jury instructions in this case the facts are such that self-defense was established as a matter of law and judgment for the defendant should have been entered notwithstanding the verdict. Defendant's motion for judgment notwithstanding the verdict is but another manner of asserting there is no evidence, or insufficient evidence, in the record to support the jury's finding that the force used in killing Skenandore was unreasonable. The standard to be applied in such situations was stated in *State v. Stevens* (1965), 26 Wis. 2d 451, 463, 132 N. W. 2d 502:

"On an appeal in a criminal case the test of the sufficiency of the evidence for a conviction is 'whether the evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendant's guilt beyond a reasonable doubt.' *State v. Johnson* (1960), 11 Wis. (2d) 130, 137, 104 N. W. (2d) 379; *State v. John* (1960), 11 Wis. (2d) 1, 103 N. W. (2d) 304; *Parke v. State* (1931), 204 Wis. 443, 235 N. W. 775."

Under the facts of this case and the inferences to be drawn therefrom, especially regarding the extent and

significance of the deceased's hand in his pocket as well as the degree of the threats implied by his actions and utterances and the response of the defendant (firing not one but four shots all at close range, the fourth while the deceased was falling), we cannot conclude as a matter of law that the proof establishes a statutory privilege of self-defense.

The defendant has cited cases from other jurisdictions. We have considered them and found them distinguishable.

*By the Court.*—Judgment and order affirmed.