CARLSON and husband, Appellants, v. DREWS OF HALES CORNERS, INC., Respondent.

*No. 149. Argued October 5, 1970.—Decided November 3, 1970.*
(Also reported in 180 N. W. 2d 546.)

---

410

For the appellants there were briefs by *Warshafsky, Rotter & Tarnoff,* attorneys, and *Ted M. Warshafsky* and *Michael I. Tarnoff* of counsel, all of Milwaukee, and oral argument by *Michael I. Tarnoff.*

For the respondent there was a brief by *Kivett & Kasdorf,* attorneys, and *Kenton E. Kilmer* of counsel, all of Milwaukee, and oral argument by *Mr. Kilmer.*

HEFFERNAN, J. On this appeal plaintiffs reiterate only a few of the grounds asserted in motions after verdict. They claim that the jury's assessment of 50 percent of the negligence to the plaintiff Eileen Carlson was grossly disproportionate in light of the evidence, and that the instructions were erroneous inasmuch as they omitted reference to the evidence tending to show plaintiff's attention had been diverted by a display of merchandise that was designed and calculated to divert a customer's attention. Additionally, they claim the instructions were erroneous because they included references to "special circumstances," such as weather and traffic conditions, when these factors were not present in the case. Plaintiffs also claim that the jury was improperly instructed in regard to "loss of wages," when the appropriate instruction should have referred to "loss of earning capacity." Plaintiffs also contend that the conduct of the trial judge in commenting on the evidence and in making disparaging remarks in respect to the conduct of plaintiffs' trial counsel was prejudicial.

The most crucial point, and the one that is determinative of this appeal, is the question of whether the jury

instructions in regard to negligence were proper. If the court erroneously instructed the jury, we need not decide whether the findings of negligence and their apportionment based on such instructions are disproportionate to the evidence.

We conclude the instructions were erroneous.

Plaintiffs requested the standard suggested instructions as they appear in Wisconsin Jury Instructions—Civil, Part II, 1902, plus a sentence not appearing therein. The additional requested clause is italicized:

"However, a person is not bound absolutely by law to see every hazard or danger, if any exists, in her pathway, even should they be plainly observable, nor to remember the existence of every condition of which he had knowledge, *especially when his attention is attracted by the display of merchandise in the store.* A customer is only required to act as a reasonably prudent person would under the circumstances." (Emphasis supplied.)

The trial judge gave the standard instruction minus the language requested by the plaintiffs. The trial judge also instructed the jury by using paragraph 4 of the jury instruction, which states:

"Ordinary care demands that such vigilance be increased where special circumstances exist. The degree of diligence with respect to keeping a proper lookout on the part of a person or customer or frequenter of a store as the plaintiff was in order to measure up to the standard of ordinary care which the law requires, varies with the time and place and the conditions which might normally be brought about because of weather or traffic in or out of the store, and the opportunity to observe these ahead and about her and all other circumstances then and there present."

This latter paragraph was objected to by the plaintiffs. It was requested in a modified form by the defendant. The defendant requested instructions that included the requirement that vigilance be increased under "special circumstances," but its request omitted any reference to

weather or traffic conditions. Apparently, "special circumstances" as viewed by defendant involved a customer's use of the bathroom facilities and the likelihood that such an area would be used for storage.

The principal error we see in the instructions is the inclusion of the "boiler plate" that appears in Wisconsin Jury Instructions—Civil, Part II, 1902. *Mondl v. F. W. Woolworth Co.* (1961), 12 Wis. 2d 571, 107 N. W. 2d 472, approved the "special circumstance" instruction in a case where it had been snowing and there was evidence that the weather conditions contributed to the plaintiff's hazard. The same case, however, highlights the caveat that the pattern instruction is appropriate only where special weather or traffic conditions exist. If other "special circumstances" are revealed by the evidence and are of any significance, such circumstances should be spelled out in the instructions and the "boiler plate" discarded.

We conclude that it was error to include the factors of weather and traffic in the instructions when such factors were totally foreign to the evidence and completely extraneous to the facts at issue.

A trial judge has great leeway in framing instructions. There is no necessity that there be exact conformity to the suggested instructions even when such instructions would be completely appropriate. It is even more apparent that there should not be exact conformance to suggested instructions where the fact situation envisaged by the instructions is different from the facts at issue. The instruction must be germane to the situation at hand and must be framed in light of the evidentiary issues. We stated in *Aetna Casualty & Surety Co. v. Osborne-McMillan Elevator Co.* (1967), 35 Wis. 2d 517, 529, 151 N. W. 2d 113:

"A trial court must have and does have some leeway in the choice of language and emphasis in framing instructions which as a whole must not favor one side or the other but should set forth the respective versions of the evidence of the contestants."

The "special circumstance" instruction proposed by the defendant at least had the virtue of relating the circumstances to the facts of the case. The instruction given by the trial judge was inappropriate to the facts and prejudicial to the plaintiffs.

We also consider it error, under the circumstances, to have excluded language that would have presented to the jury the standard of reasonable care to be exercised by a frequenter where there was evidence that a merchandise display had diverted attention.

Plaintiffs' requested instruction said:

"A person is not bound . . . to see every *hazard* . . . *especially when his attention is attracted by the display of merchandise in the store* . . . ." (Emphasis supplied.)

We believe a more appropriate instruction—one less likely to lead to the inference that the court had prejudged the evidence—would be:

"A person is not bound to see every hazard, especially if you are satisfied from the evidence that his attention is attracted by a display of merchandise in the store."

There was evidence that the plaintiff was focusing her attention on the display of glassware at the time of the fall. There was also testimony of the store manager that the basic criterion in arranging merchandise was "eye appeal." With these facts in evidence, an instruction should have been given that posed the duty of the plaintiff under the circumstances.

In *Zehren v. F. W. Woolworth Co.* (1960), 11 Wis. 2d 539, 105 N. W. 2d 563, a customer was examining birthday cards and failed to see a scale (apparently one that not only indicated weight but also ejected a horoscope card) which projected about two feet into the aisle. The evidence indicated that "there was nothing to prevent the plaintiff from seeing the scale. However, she did not see the scale." (pp. 541, 542)

We stated the duty of a frequenter under these circumstances:

"A person is not bound as a matter of law to see absolutely every defect or danger in his pathway which is plainly observable nor to remember the existence of every defect or hazard of which he has knowledge, especially when his attention is attracted by the display of merchandise in a store. The customer's attention in a store may be primarily focused on seeking and examining merchandise and considering the purchase thereof. A customer is only required to act as a reasonably prudent person under the circumstances." (pp. 542, 543)

The plaintiffs' requested instruction was proper. We cannot conclude that its omission was in itself prejudicial to the plaintiffs' case, since the general language of the instruction given by the trial court makes it clear that a frequenter has only a duty of reasonable lookout under the circumstances. However, the exclusion of this instruction incorporating the evidentiary fact that the plaintiff's attention might well have been diverted by the attractively laid-out merchandise, together with the inclusion of an instruction that incorporated references to weather and traffic—factors not in evidence, resulted in instructions that focused the jury's attention on facts not germane to the lawsuit.

We conclude that the jury following these instructions could not have made a reasonable analysis of the evidence. Accordingly, the findings of negligence and the jury's apportionment are set aside, and a new trial on all issues is required.

Having set aside the negligence finding, the entire verdict must fall, and a discussion of the damage verdict is not necessary to the disposition of this case. However, plaintiffs point out that the trial judge, over objections, instructed the jury in regard to "loss of wages" as contrasted to plaintiffs' request for an instruction relating

to "loss of earning capacity." There was evidence that plaintiff had been employed at various times during the ten-year period preceding her fall in Drews department store. There was evidence that she was not working at the time of the fall because she had recently undergone a hemorrhoidectomy. There was evidence that she had intended to resume work in September, but was unable to do so because of the injuries sustained in the fall at Drews. Under those facts, unless the jury considered her testimony wholly incredible, and we see no basis for that, it is obvious that some damages should have been awarded. The jury's failure to make an award is directly attributable to the erroneous jury instructions.

In a case where a plaintiff is not employed at the time of an injury, it is unlikely that a jury will return a verdict for "loss of wages" even though it is clear that the injury deprived the plaintiff of the opportunity to work. It is imperative in such a situation to frame the instruction in terms of "loss of earning capacity."

An instruction couched in terms of "loss of wages" is ipso facto erroneous under these circumstances. In fact, an instruction for damages in a personal injury suit couched in terms of "loss of wages" is always incorrect. It may not, of course, thereby be unfairly prejudicial, for in many cases the wage loss is an accurate gauge of loss of earning capacity.

The end product of a jury's deliberation should be an award based not on loss of wages, but upon loss of earning capacity. The proper test which this court has adopted is stated in *Ballard v. Lumbermens Mut. Casualty Co.* (1967), 33 Wis. 2d 601, 608, 148 N. W. 2d 65:

> " 'In determining past and future loss of earning capacity the question is not whether plaintiff would have worked, by choice. He is entitled to compensation for his lost *capacity* to earn, whether he would have chosen to exercise it or not.' Schreiber, Damages in Personal Injury and Wrongful Death Cases (PLI, 1965), p. 36; see

also Ghiardi, Personal Injury Damages in Wisconsin, p. 123, sec. 8.01."

The suggested Wisconsin Jury Instruction—Civil, Part II, 1775 properly instructs the jury that the measure of damages for loss of earnings is "such sum as he was reasonably *capable of earning* at his usual trade or occupation . . . ." (Emphasis supplied.) The abbreviated instruction used herein was erroneous.

Plaintiffs contend that the trial judge's conduct prejudiced their cause. We find no evidence that this is true. The untoward result reached by the verdict is more reasonably explained by errors in instructions than by alleged improper conduct of the judge. True, the record evinces occasional instances of the trial judge's impatience with testimony in the course of plaintiffs' case that he thought was cumulative and of little probative value. We see no indication, however, that the trial judge's efforts to expedite the trial prejudiced the jury against the plaintiffs.

Since we have reversed the judgment for other reasons, we do not discuss *in extenso* the allegations of prejudice asserted by the plaintiffs. We repeat, however, for the guidance of the bench and bar our statement in *Breunig v. American Family Ins. Co.* (1970), 45 Wis. 2d 536, 547, 173 N. W. 2d 619:

"The responsibility for an atmosphere of impartiality during the course of a trial rests upon the trial judge. His conduct in hearing the case must be fair to both sides and he should refrain from remarks which might injure either of the parties to the litigation. *Hansen v. St. Paul City Ry.* (1950), 231 Minn. 354, 43 N. W. 2d 260. Since a trial is and should be an adversary proceeding, the trial judge should take care not to be thrown off balance by his own emotions or by provocations of counsel. Because of the tremendous influence which the trial judge has on the jury by his conduct, his facial expressions, his inflexion in the pronouncement of words, and his asking questions of a witness, it is most important for a judge to be sensitive to his conduct."

We re-emphasize, however, that it is within the discretion of a trial judge to exclude otherwise admissible evidence if he thinks its admission will be unduly time consuming, is cumulative to evidence already admitted, or its probative value is outweighed by factors of jury confusion. *See* Rule 303, Model Code of Evidence.

We again admonish trial counsel to incorporate in the record a summary of any judicial conduct that reasonably will result in prejudice. We stated in *Breunig* that only if judicial conduct is serious enough to call for a trial court motion for mistrial will we consider such conduct on appeal.

While other grounds for reversal are argued by the appellant, none are of sufficient significance to warrant separate discussion in view of our determination to order a new trial on all issues because of erroneous instruction to the jury.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings consistent with this opinion.