STATE of Wisconsin, Plaintiff-Respondent-Petitioner,†

v.

Alfred H. CAMACHO, Defendant-Appellant.††

Supreme Court

*No. 91–0770–CR. Oral argument March 9, 1993.—Decided June 16, 1993.*

(Also reported in 501 N.W.2d 380.)

†Motion for reconsideration filed.
††Motion for reconsideration filed.

862

863

For the plaintiff-respondent-petitioner the cause was argued by *Sally L. Wellman,* assistant attorney general, with whom on the briefs was *James E. Doyle,* attorney general.

For the defendant-appellant there was a brief by *Michael D. Dean* and *Aul, McKoy, Aschenbrener & Dean, Ltd.,* Milwaukee and oral argument by *Michael D. Dean.*

DAY, J. This is a review of a published decision by the court of appeals[1] reversing a judgment of conviction and an order of the circuit court for Waukesha County,

---

[1] *State v. Camacho,* 170 Wis. 2d 53, 487 N.W.2d 67 (Ct. App. 1992).

864

Honorable Roger P. Murphy, Judge. At issue are the elements of the crime of imperfect self-defense manslaughter. This case presents the issue of whether a criminal defendant charged with first-degree murder is entitled to a conviction of the lesser offense of imperfect self-defense manslaughter in every case where the defendant actually believed he needed to act in self-defense. We hold that a defendant charged with first-degree murder must show a reasonable belief that he was preventing or terminating an unlawful interference with his person before he can obtain a conviction of imperfect self-defense manslaughter. We therefore reverse the court of appeals.

The parties do not dispute that Alfredo Camacho, an illegal alien from Mexico, shot Waukesha County Deputy Sheriff Richard Bach four times from a distance of approximately two feet, causing injuries which would have resulted in Deputy Bach's death had he not received prompt and effective medical treatment. Nor do the parties dispute the events which led to the confrontation between Deputy Bach and Camacho.

Shortly after 4:00 a.m. on March 3, 1988, Deputy Bach stopped Camacho's vehicle after witnessing Camacho make an illegal U-turn on Interstate I-94. Camacho, who was alone, exited the vehicle and began walking toward Deputy Bach's squad car. Deputy Bach exited his vehicle and was forced to tell Camacho to stop approaching three times before Camacho complied. Deputy Bach patted Camacho down[2] and requested his driver's

---

[2] Deputy Bach testified that he could not recall whether he patted down Camacho. However, Dr. Glen Willet, who was pulled over by Deputy Bach for speeding shortly before Deputy Bach pulled over Camacho, testified that he witnessed Deputy Bach pat down Camacho and that Deputy Bach did not use any type of force or threats.

license. After Camacho replied "me no got," Deputy Bach instructed Camacho to sit in his vehicle. Deputy Bach then approached Camacho's vehicle to inquire about the spelling of Camacho's name and his date of birth. Upon receiving this information, Deputy Bach returned to his squad car and called in to verify whether Camacho possessed a valid driver's license. Deputy Bach learned that Camacho did not have a driver's license and returned to Camacho's vehicle.

At this point in the story, there are three different versions of the events which took place, two of which are supplied by Camacho. According to the testimony of Deputy Bach, he approached Camacho's vehicle on the driver's side without drawing his gun. As he leaned in the open window to speak with Camacho, Camacho suddenly spun, grabbed an automatic weapon, and, while smiling, shot Deputy Bach four times from close range.

According to Camacho's testimony at trial, Deputy Bach pulled his gun out of his holster as he approached Camacho's vehicle. Deputy Bach then reached in the open window, grabbed Camacho's hair and pointed his gun at Camacho's face. Camacho pulled away from Deputy Bach and heard a shot fired outside of the car. He then pulled his own unregistered gun out from under the car rug and shot Deputy Bach.

After Camacho's testimony, the State presented rebuttal evidence in the form of prior inconsistent statements made by Camacho. Shortly after his arrest, Camacho stated that Deputy Bach never pointed a gun at him. Camacho also stated that he was angry at Deputy Bach because Deputy Bach called him crazy.

Additionally, Camacho stated at trial that he was searching for State Trooper Camacho so that he could give Trooper Camacho a present of some tacos. Trooper Santiago Camacho, who is not related to the defendant,

testified that he pulled the defendant over and gave him a ticket for speeding and driving without a license on February 28, 1988. At that time, the defendant commented on Trooper Camacho's gun and said that he also had a gun. Shortly after Camacho shot Deputy Bach, Trooper Camacho arrived on the scene and asked the the defendant whether he had a gun, the defendant replied, "yeah, that's the present for you. It's under the seat." The defendant also stated that he bought the gun because he was angry with Trooper Camacho for giving him and his friend a citation and he thought it was unfair for a Hispanic to give another Hispanic a citation.

At the close of the evidence, the circuit court instructed the jury on the elements of attempted first-degree murder, self-defense and attempted manslaughter. The portion of the circuit court's instruction regarding the interplay between attempted first-degree murder and attempted manslaughter provided:

> As applied to this case, the effect of the law of self-defense is that if the defendant attempted to cause the death of Deputy Richard Bach with the intent to kill, but the defendant's conduct was not in self-defense or the defendant was not entitled to use self-defense and the belief by the defendant that he was entitled to use self-defense was unreasonable, then the defendant is guilty of the crime of attempted first degree murder.

Rather than giving the standard jury instruction regarding attempted imperfect self-defense manslaughter, the circuit court gave the following instruction:

> Before you may find the defendant guilty of attempted manslaughter, you must find beyond a reasonable doubt that the defendant attempted to cause the death of Deputy Richard Bach with the intent to kill and was entitled to believe under the facts in this

867

case that he was acting in self defense, but the amount of force used was unnecessary or excessive.

The jury returned a verdict finding Camacho guilty of attempted first-degree murder while armed with a dangerous weapon. Through a new attorney, Camacho brought a postconviction motion and asserted that: (1) the jury instructions given by the circuit court misstated the law pertaining to the crime of imperfect self-defense manslaughter; (2) either the prosecutor secretly changed the instructions without notifying Camacho's trial counsel or Camacho's trial counsel was ineffective if he knew of the instructions and did not object; (3) the circuit court erred in failing to suppress precustodial and custodial statements made by Camacho; and (4) the prosecutor engaged in misconduct during the closing argument.

The circuit court denied Camacho's motion for a new trial and Camacho appealed. The court of appeals affirmed the circuit court's evidentiary rulings concerning the precustodial and custodial statements made by Camacho. The court of appeals, however, concluded that the instructions given by the circuit court "seriously misstated the law of attempted first-degree murder and the lesser included crime of attempted manslaughter/ imperfect self-defense, and constituted prejudicial error." *Camacho,* 170 Wis. 2d at 59. Camacho conceded that his trial counsel did not properly object to the instructions and the court of appeals noted that "[t]he general rule requires that a party object to an improper jury instruction at the instruction conference or there is a waiver of the right to challenge the jury instructions on appeal." *Id.* at 62. Nevertheless, the court of appeals concluded that "under our discretionary power of reversal we may consider the unobjected to jury instructions" because "the real controversy may not have been fully tried." *Id.* at 63. The court of appeals did not reach the

issue of whether the prosecutor engaged in misconduct during the closing argument.

This court granted the State's petition for review of the portion of the court of appeals' decision which held that the instructions given by the circuit court constituted prejudicial error. This court denied Camacho's cross-petition for review of the portion of the court of appeals' decision which upheld the circuit court's evidentiary rulings. We reverse the portion of the court of appeals' decision which concluded that the instructions given by the circuit court constituted prejudicial error. Thus, we need not consider whether the court of appeals possessed the discretionary authority to review the instructions. Furthermore, we conclude that the circuit court did not erroneously exercise its discretion when it denied Camacho's motion for a new trial based on the alleged prosecutorial misconduct during the closing argument.

■

At issue are the elements of the crime of imperfect self-defense manslaughter. Imperfect self-defense manslaughter must be distinguished from the absolute privilege of self-defense, which is often referred to as perfect self-defense. The absolute privilege of perfect self-defense applies where a defendant shows all three of the following elements: (1) the defendant reasonably believed that he was preventing or terminating an unlawful interference with his person; (2) the defendant reasonably believed that force or threat thereof was necessary to prevent or terminate the interference; and (3) the defendant reasonably believed that the actual amount of force used was necessary to prevent or terminate the interference. *See* Sec. 939.48, Stats. 1991–92. Thus, the jury must find that all three beliefs were rea-

sonable before acquitting the defendant on the grounds of perfect self-defense.

Camacho argues that a defendant is entitled to a conviction of imperfect self-defense manslaughter whenever the defendant shows an actual belief that force was necessary, regardless of whether that belief is reasonable. Under Camacho's theory, which the court of appeals adopted, a defendant is entitled to a conviction of manslaughter in every case where the jury finds: (1) the defendant had an actual, but unreasonable, belief that force was necessary; or (2) the defendant had a reasonable belief that force was necessary, but had an actual, but unreasonable, belief regarding the amount of force necessary. According to Camacho, a defendant is entitled to a conviction of manslaughter even if the defendant did not possess a reasonable belief that he was preventing or terminating an unlawful interference with his person.

The State contends that a defendant must first show a reasonable belief that he was preventing or terminating an unlawful interference with his person before he can obtain a conviction of imperfect self-defense manslaughter. According to the State, a defendant is entitled to a conviction of imperfect self-defense manslaughter if the jury finds: (1) the defendant had a reasonable belief that he was preventing or terminating an unlawful interference with his person; AND (2) the defendant had an actual, but unreasonable belief that force was necessary to prevent or terminate the unlawful interference; OR (3) the defendant had a reasonable belief that force was necessary to prevent or terminate the unlawful interference but the defendant's actual belief regarding the amount of force necessary was unreasonable. Under the State's theory, the first element, which requires a reasonable belief that the defen-

870

dant was preventing or terminating an unlawful interference with his person, serves as an objective threshold test. Only if the jury finds that the defendant satisfied the first element, may the jury consider whether the defendant satisfied one of the final two elements.

We hold that the State's three-element test accurately states the law pertaining to the crime of imperfect self-defense manslaughter.

We examine the language of sec. 940.05, Stats. 1985-86.[3] Section 940.05, Stats. provides in pertinent part:

> **940.05 Manslaughter.** Whoever causes the death of another human being under any of the following circumstances is guilty of a Class C felony:
>
> . . .
>
> **(2)** Unnecessarily, **in the exercise of his privilege of self-defense** or defense of others or the privilege to prevent or terminate the commission of a felony; (emphasis added).

The language of sec. 940.05, Stats. expressly states that imperfect self-defense manslaughter applies when a defendant causes the death of another human being "in the exercise of his privilege of self-defense."

Section 939.48, Stats. 1985-86, defines the privilege of self-defense. Section 939.48, Stats. provides in pertinent part:

> **939.48 Self-defense and defense of others. (1)** A person is privileged to threaten or intentionally use force against another *for the purpose of preventing or terminating what he reasona-*

---

[3] Camacho shot Deputy Bach on March 3, 1988. Although the 1987-88, Stats. contain the revised homicide laws, these laws apply only to crimes committed on or after January 1, 1989. Thus, the 1985-86, Stats. control the present case.

*bly believes to be an unlawful interference with his person.* The actor may intentionally use only such force or threat thereof as he reasonably believes is necessary to prevent or terminate the interference. He may not intentionally use force which is intended or likely to cause death or great bodily harm unless he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself. (emphasis added).

According to the unambiguous language of sec. 939.48, Stats., a person is privileged to act in self-defense only if that person reasonably believes that he is preventing or terminating an unlawful interference with his person.

Read together, secs. 939.48 and 940.05, Stats. require a defendant to show that he was exercising his privilege of self-defense. A person cannot exercise the privilege of self-defense, however, unless that person reasonably believes that he is preventing or terminating an unlawful interference with his person. Thus, the plain language of secs. 939.48 and 940.05, requires a criminal defendant to show that he reasonably believed that he was preventing or terminating an unlawful interference with his person before he can obtain a conviction of imperfect self-defense manslaughter.

This initial requirement of a reasonable belief regarding an unlawful interference is a threshold requirement. If the jury finds that a defendant lacked such a reasonable belief, the jury cannot convict the defendant of imperfect self-defense manslaughter.

If, however, the jury finds that the defendant had a reasonable belief that he was preventing or terminating an unlawful interference, the jury must then consider

872

whether the defendant took the life of another human being "unnecessarily." A defendant takes the life of another human being "unnecessarily," as that word is used in sec. 940.05(2), Stats., when: (1) a defendant has an actual, but unreasonable, belief that force is necessary to prevent or terminate the unlawful interference; or (2) a defendant has a reasonable belief that force is necessary but his actual belief regarding the amount of force which is necessary is unreasonable. Thus, a jury must first find that the defendant possessed a reasonable belief that he was threatened with an unlawful interference. After this finding, the jury can then convict the defendant of imperfect self-defense manslaughter if the defendant's belief regarding the necessity of force to terminate or prevent the unlawful interference or the defendant's belief regarding the amount of force necessary was unreasonable.

■

For example, a defendant will be entitled to a conviction of imperfect self-defense manslaughter if the jury finds that the defendant possessed a reasonable belief that he was threatened with an unlawful interference, but the defendant's belief that force was necessary to terminate or prevent the unlawful interference was unreasonable. This interpretation of the crime of imperfect self-defense manslaughter recognizes that not every unlawful interference will give rise to a reasonable belief that force is necessary to terminate the unlawful interference. Depending on the type of unlawful interference, the interference may be terminated without the use of force.

A defendant will also be entitled to a conviction of imperfect self-defense manslaughter if the jury finds that the defendant possessed a reasonable belief that he was threatened with an unlawful interference, but the defen-

dant's belief regarding the amount of force necessary to prevent or terminate the unlawful interference was unreasonable. Under certain circumstances, even where the defendant possesses a reasonable belief regarding both the unlawful interference and the need to use force, the defendant may unreasonably overestimate the amount of force needed to prevent or terminate the interference. Of course, if the jury finds that the defendant possessed a reasonable belief that he was threatened with an unlawful interference, and the defendant's belief regarding the need to use force to prevent or terminate the interference and the amount of force necessary are both reasonable, the jury should acquit the defendant on the basis of the perfect self-defense doctrine.

The legislative history of sec. 940.05, Stats. supports the conclusion that the crime of imperfect self-defense manslaughter contains an objective threshold element requiring that the defendant possess a reasonable belief that he is preventing or terminating an unlawful interference with his person. We note that a 1953 proposed draft of the criminal code defined imperfect self-defense manslaughter as follows:

> **340.03 Manslaughter.** Whoever commits what would otherwise constitute first-degree murder or second-degree murder under any of the following mitigating circumstances may be imprisoned not more than 10 years;
>
> . . . .
>
> (2) The crime is committed because the actor believes that his act is necessary for the exercise of his privilege of self-defense or defense of others, the privilege to prevent or terminate the commission of a

crime, or his privilege to arrest for crime, but such belief is unreasonable under the circumstances;

5 Wisconsin Legislative Council, *Judiciary Committee Report on the Criminal Code* at 60 (1953). The comment to this proposed version of imperfect self-defense manslaughter provides in pertinent part:

> Subsection (2) deals with a situation in which the actor believes that his homicidal act is lawful, but his belief is erroneous and unreasonable. The actor may erroneously but in good faith believe that the use of deadly force is necessary under the circumstances in which it is unreasonable to so believe, or **he may believe that he is defending himself against 'unlawful' conduct or making an arrest for 'unlawful conduct' when actually the conduct is not unlawful and it is unreasonable to believe that it is unlawful.**

*Id.* at 61 (emphasis added). The comment demonstrates that the proposed version contained in the 1953 draft of the Criminal Code allowed a defendant to obtain a conviction for imperfect self-defense manslaughter even if the defendant did not possess a reasonable belief that he was preventing or terminating an unlawful interference with his person.

Although the proposed version contained in the 1953 draft of the Criminal Code specifically allowed a defendant to obtain a conviction of imperfect self-defense manslaughter upon showing an actual belief that his act was necessary in self-defense, it is significant that the Legislature did not adopt that version. Rather than adopting this broad version of imperfect self-defense manslaughter which did not contain an objective threshold element, the Legislature enacted the language set forth in sec. 940.05, Stats. 1985–86. As previously discussed, sec. 940.05, requires that a defendant claiming

875

imperfect self-defense manslaughter show that he was exercising his privilege of self-defense. We note that sec. 940.05, differs from the proposed version contained in the 1953 draft of the Criminal Code in that sec. 940.05, does not contain any language suggesting that imperfect self-defense manslaughter applies where the defendant unreasonably believed that he was acting in self-defense. Rather, sec. 940.05, specifically states that a defendant must be exercising his privilege of self-defense, which sec. 939.48, Stats. defines as "preventing or terminating what he **reasonably** believes to be an unlawful interference with his person." (emphasis added). The fact that the Legislature considered and rejected a version which would have allowed a defendant to obtain a conviction of imperfect self-defense manslaughter by showing a mere actual belief that there was an unlawful interference and therefore a need to act in self-defense supports the conclusion that sec. 940.05, requires an objective, reasonable belief.

Public policy considerations also support the conclusion that a defendant should not be entitled to escape a conviction for first-degree murder by simply claiming an actual but unreasonable belief in the need to act in self-defense. The privilege to act in self-defense does not exist in a vacuum. Sound public policy dictates that a person may exercise the privilege to act in self-defense only when they possess a reasonable belief that the action will prevent or terminate an unlawful interference with their person. If the law were otherwise, every defendant who claimed an actual belief in the need to use force would escape conviction for first-degree murder.

Camacho cites a number of cases in support of his position that a defendant may escape a conviction of first-degree murder by claiming that he actually believed

876

force was necessary. *See e.g., State v. Gomaz,* 141 Wis. 2d 302, 414 N.W.2d 626 (1987); *Roe v. State,* 95 Wis. 2d 226, 290 N.W.2d 291 (1980); *State v. Johnnies,* 76 Wis. 2d 578, 251 N.W.2d 807 (1976); *Bedford v. State,* 65 Wis. 2d 357, 222 N.W.2d 658 (1974); *Ross v. State,* 61 Wis. 2d 160, 211 N.W.2d 827 (1973); *Mitchell v. State,* 47 Wis. 2d 695, 177 N.W.2d 833 (1970). We acknowledge that none of the cases cited by Camacho mention the objective threshold element of imperfect self-defense manslaughter. We note, however, that this court has never explicitly rejected such an element. Furthermore, this court never even considered such an element in the cases cited by Camacho.

This court's decisions in *Roe, Johnnies* and *Bedford* are similar in that, in each case, this court concluded that the defendant did not even possess an actual belief regarding the need to use force. Thus, in each decision, this court focused solely on the second element of imperfect self-defense manslaughter; the requirement that the defendant actually believe force is necessary to prevent or terminate an unlawful interference. Having held that the defendant did not satisfy this requirement, this court had no reason to discuss the first element (a reasonable belief that the defendant was preventing or terminating an unlawful interference) or the third element (an actual belief that the amount of force used was necessary).

In *Roe,* this court stated that "[t]he crime of manslaughter based on perfect self-defense arises only if the defendant believes that the act causing death was necessary in the exercise of self-defense but that belief was unreasonable." This language, which does not mention either the first or the third element of imperfect self-defense manslaughter, demonstrates that this court was concerned solely with the second element. This court then held that "[f]rom this testimony it is apparent that

877

Mr. Roe **did not believe that the force employed by him was necessary to prevent or terminate what he believed** *(whether that belief was reasonable or otherwise)* **to be an unlawful interference with his person.**" *Id.* at 245 (emphasis added). This language demonstrates that this court did not need to discuss the issue of whether the defendant's belief that he was preventing or terminating an unlawful interference was reasonable because the defendant did not even possess an actual belief regarding the need to use force in response to such an unlawful interference.

Similarly, in *Johnnies,* this court stated that "the submission of an instruction on manslaughter would have been proper only if under some reasonable view, the evidence was sufficient to establish that the defendant shot the deceased believing her **use of force** was necessary in self-defense, but that her belief was unreasonable under the circumstances." *Johnnies,* 76 Wis. 2d at 583. Again, this language demonstrates that this court focused solely on the second element of the crime of imperfect self-defense manslaughter. This court held that "[n]either version of the circumstances in this case supports a conclusion that the defendant shot the deceased **believing her use of force was necessary** in the exercise of self-defense." *Id.* at 583–84 (emphasis added). Like the decision in *Roe,* this court did not need to discuss the issue of whether the defendant reasonably believed that she was preventing or terminating an unlawful interference.

Similarly, in *Bedford,* this court stated that "the question presented in this case is whether the record makes reasonable a conclusion that the defendant here killed **believing** his act was necessary in self-defense. We think that it does not." *Bedford,* 65 Wis. 2d at 364 (emphasis added). Again, this court had no reason to

878

discuss the first element of imperfect self-defense man-
slaughter because the defendant lacked an actual belief
that force was necessary.

The issue presented in *Gomaz* was whether the cir-
cuit court erred in refusing to instruct the jury as to
imperfect self-defense manslaughter even though the cir-
cuit court instructed the jury regarding perfect self-
defense. In deciding this issue, this court focused on the
two differences between perfect self-defense and imper-
fect self-defense. This court stated:

> To be within the scope of the absolute privilege of
> sec. 939.48, however, both the actor's belief and the
> amount of force used must be reasonable. Manslaugh-
> ter, under sec. 940.05(2), operates where the actor
> actually believed the force used was necessary for
> self-defense but the belief or the amount of force used
> was unreasonable. *Id.* at 310.

This court held that "since a self-defense instruction
inherently requires examination of 'reasonableness,' it is
inconsistent and improper to deny a manslaughter self-
defense instruction where the jury is properly, as the
state concedes, instructed as to the privilege of complete
self-defense. *Id.* This court's discussion of the elements
of perfect and imperfect self-defense, therefore, was lim-
ited to the two differences between perfect and imperfect
self-defense: (1) perfect self-defense requires a reason-
able belief in the need to use force while imperfect self-
defense requires only an actual belief in the need to use
force; and (2) perfect self-defense requires a reasonable
belief in the amount of force necessary while imperfect
self-defense requires only an actual belief in the amount
of force necessary. Our holding today that both perfect
and imperfect self-defense require a defendant to possess
a reasonable belief that he is preventing or terminating

879

an unlawful interference with person does not conflict with this court's holding in *Gomaz,* which discussed only differences contained in the second and third elements of perfect and imperfect self-defense and concluded that a court should give an instruction regarding imperfect self-defense manslaughter every time the court gives an instruction regarding perfect self-defense.

Just like in *Gomaz,* the issue in *Ross* was whether the circuit court erred in refusing to give an instruction regarding manslaughter even though the circuit court gave an instruction regarding perfect self-defense. Just like in *Gomaz,* this court focused on the differences contained in the second and third elements of perfect and imperfect self-defense and stated:

> It is thus apparent that the privilege of self-defense may be a conditional one. If a defendant believes that intentional use of deadly force is necessary to protect himself and he uses deadly force when he could reasonably believe that deadly force was necessary, there is a complete privilege. There may, however, be occasions where a defendant used deadly force when his belief, though his at the time, was unreasonable. Or there may be the circumstance where his belief that the necessity of self-defense was reasonable, but the deadly force used was unnecessary. *Ross,* 61 Wis. 2d at 166–67.

Just like this court's decision in *Gomaz,* the decision in *Ross* is not affected by our holding today because *Ross* focused on the differences between perfect and imperfect self-defense contained in the second and third element without mentioning the first element.

In *Mitchell,* this court approved a jury instruction which stated that a defendant was entitled to a conviction of manslaughter if "he believed that his action was necessary in the exercise of his privilege of self-defense

but actually his belief was unreasonable because a reasonable person would not have believed under the circumstances that he was privileged at all to use force under the circumstances or a reasonable person would not have used as much force as was used by the defendant." We note that the instruction does not contain any language allowing an actual, but unreasonable belief regarding an unlawful interference. This instruction is consistent with our holding today in that it only allows the defendant to possess an unreasonable belief regarding the need to use force or the amount of force necessary.

The foregoing discussion of the cases cited by Camacho illustrates that this court has never explicitly rejected the objective threshold element. Furthermore, in the most recent decision regarding imperfect self-defense manslaughter, this court held that a defendant was not entitled to a conviction of imperfect self-defense manslaughter even though the defendant possessed an actual belief, which stemmed entirely from mental delusions and paranoia, regarding an unlawful interference with his person. *State v. Seifert,* 155 Wis. 2d 53, 68, 454 N.W.2d 346 (1990). One member of this court stated that this court's decision in *Seifert* could be interpreted as holding that "the crime of attempted imperfect self-defense manslaughter encompasses an objective element." *Id.* at 72 (Abrahamson, J. dissenting). We now make clear that the crime of attempted imperfect self-defense manslaughter does contain an objective threshold element requiring that the defendant reasonably believe that he is preventing or terminating an unlawful interference.

The court of appeals' decision was based on a prior decision by the court of appeals in *State v. Harp,* 150 Wis. 2d 861, 443 N.W.2d 38 (1988). To the extent that it

contradicts our holding today, we hereby overrule the court of appeals' decision in *Harp*.

In order to provide guidance to the circuit court judges, we further conclude that the 1987 revision of the Criminal Code did not alter the crime of imperfect self-defense manslaughter. Section 940.01, Stats. 1991-92, the new imperfect self-defense statute, provides in pertinent part:

> **940.01   First-degree   intentional   homicide. (1)** OFFENSE. Except as provided is sub. (2), whoever causes the death of another human being with intent to kill that person or another is guilty of a Class A felony.
>
> **(2)** MITIGATING CIRCUMSTANCES. The following are affirmative defenses to prosecution under this section which mitigate the offense to 2nd-degree intentional homicide under s. 940.05:
>
> . . . .
>
> (b)   *Unnecessary defensive force.* Death was caused because the actor believed that he or she or another was in imminent danger of death or great bodily harm and that the force used was necessary to defend the endangered person, if either belief was unreasonable.

Camacho contends that "[t]he 1987 revisions were intended to preserve and restate existing law, eliminating archaic and confusing language without substantive change." We agree. Camacho's failure to cite any legislative history which demonstrates that the Legislature intended to change the substantive elements of imperfect self-defense manslaughter leads us to conclude that the crime of imperfect self-defense manslaughter still consists of an objective threshold element and two sub-

882

jective elements even though the Legislature changed the language of the statute.

The crime of imperfect self-defense manslaughter, therefore, still contains the objective threshold element requiring a reasonable belief that the defendant was preventing or terminating an unlawful interference with his person. Once a defendant passes this first hurdle, he is then entitled to a conviction of imperfect self-defense manslaughter if: (1) he had an actual, but unreasonable, belief that force was necessary because the unlawful interference resulted in an imminent danger of death or great bodily harm;[4] or (2) he possessed a reasonable belief that force was necessary because the unlawful interference resulted in an imminent danger of death or great bodily harm but his belief regarding the amount of force necessary was unreasonable.

The next question is did the instructions given by the circuit court in this case correctly state the law. When reviewing jury instructions, this court has noted that "[a] trial judge has great leeway in framing instructions. There is no necessity that there be exact conformity to the suggested instructions even when such instructions would be completely appropriate." *Carlson v. Drews of Hales Corners, Inc.*, 48 Wis. 2d 408, 414, 180 N.W.2d 546 (1970).

In the present case, the circuit court's deviation from the uniform jury instruction operative at the time

---

[4] The new language "imminent danger of death or great bodily harm" assists in distinguishing between those unlawful interferences which give rise to a reasonable belief that force is necessary and those which do not. If a reasonable belief in an unlawful interference results in an imminent danger of death or great bodily harm, the defendant could then reasonably conclude that force is necessary.

was proper because the uniform instruction contained the following misstatement of the law:

> Before you may find the defendant guilty of first degree murder, you must be satisfied beyond a reasonable doubt that he caused the death of (name of victim) with the intent to kill and that the defendant did not actually believe the force used was necessary in self-defense at the time he caused the death. When first degree murder is considered, the reasonableness of the defendant's belief is not an issue. You are to be concerned only with what the defendant actually believed. Wis. J I—Criminal 1141.

The uniform jury instruction cited above is not an accurate statement of the law in that it allows a defendant to escape a conviction of first-degree murder even if the defendant does not show that he reasonably believed that he was terminating or preventing an unlawful interference.

■

We conclude that the instructions given by the circuit court, while not artfully drafted, accurately stated the law pertaining to the crime of imperfect self-defense manslaughter. The circuit court instructed the jury to find Camacho guilty of first-degree murder if "the belief by the defendant that he was entitled to use self-defense was unreasonable." This statement sufficiently describes the objective threshold element of imperfect self-defense manslaughter, under which a person is not entitled to use self-defense absent a reasonable belief that they are preventing or terminating an unlawful interference.

With specific regard to the crime of attempted imperfect self-defense manslaughter, the circuit court instructed the jury to find Camacho guilty if Camacho "was entitled to believe under the facts in this case that he was acting in self-defense, but the amount of force

used was unnecessary or excessive." The phrase "entitled to believe under the facts in this case that he was acting in self-defense" describes the initial objective threshold element. The circuit court then instructed the jury to find Camacho guilty of imperfect self-defense manslaughter if the force used was unnecessary (i.e. the defendant had an actual but unreasonable belief that force was necessary to prevent or terminate the unlawful interference) or excessive (i.e. the defendant had an unreasonable belief regarding the amount of force needed to prevent or terminate the unlawful interference). We therefore conclude that the instructions given by the circuit court, when read as a whole, accurately state the law pertaining to imperfect self-defense manslaughter.

Finally, Camacho argues that the prosecutor denied him a fair trial by making an improper comment to the jury during closing arguments. Camacho claims that "it was absolutely the prosecutor's intent to convince the jury that a finding of 'not guilty' as to Alfredo Camacho was the equivalent of a finding of 'guilty' against Deputy Bach." Camacho complains of the following statement:

> "I ask you to listen closely to the instructions given to you by the Court and read them closely. You're going to get the instructions. Don't give a compromised verdict in this case. Either find him guilty of what he did or let him go. That's what the justice system is about. I just wish I would have known about this earlier, so I could charge Deputy Bach and have the right defendant in this case rather than wasting all of your time and the defendant's time . . .. Don't consider an attempted manslaughter. Don't consider a less serious offense. You can if you want to find him not guilty. Because if you find his version of the events credible, Deputy Bach should be the one on trial, not the defendant."

This court has stated that "a motion for mistrial on the grounds of improper prosecutorial conduct is addressed to the sound discretion of the trial court and will not be reversed by this court unless there is evidence of abuse of discretion and prejudice to the defendant." *Hoppe v. State,* 74 Wis. 2d 107, 119–20, 246 N.W.2d 122 (1976). In the present case, the prosecutor's statement merely pointed out that, if Camacho's testimony was true, Deputy Bach's conduct was unlawful. Considering that Camacho testified that Deputy Bach grabbed him by the hair and pointed a gun in his face without provocation, the prosecutor's statement was absolutely correct. We therefore find that the circuit court did not erroneously exercise its discretion when it denied Camacho's motion for a mistrial.

*By the Court.*—The decision of the court of appeals is reversed.

WILLIAM A. BABLITCH, J. *(dissenting).* The question answered by the majority is one that has been the subject of much debate. Reasonable people have differed. *See State v. Seifert,* 155 Wis. 2d 53, 454 N.W.2d 346 (1990); *State v. Harp,* 150 Wis. 2d 861, 443 N.W.2d 38 (Ct. App. 1989); Walter Dickey, David Schultz, James L. Fullin, Jr., *The Importance of Clarity in the Law of Homicide: The Wisconsin Revision,* 1989 Wis. L. Rev. 1323, 1343–44 (1989); Wisconsin Criminal Jury Instruction 1017 Committee Comment at p. 11 (1991). Given the obvious ambiguity surrounding both the pre-1987 statute and the 1987 revision, I choose to look beyond the ambiguous words of the statutes and the ambiguous legislative history and turn to the policy and concerns underlying the criminal law in order to ascertain the

legislature's intent. In doing so, I am forced to disagree with the conclusion reached by the majority.

In punishing for homicide, the law is concerned with culpability. Today, the majority says that a person who has an actual, although unreasonable, belief that he or she is being unlawfully interfered with is just as culpable as one who intentionally murders another without such a belief. In other words, one who kills with an actual but unreasonable belief of unlawful interference is as culpable as one who murders solely for the sake of taking a life or one who with premeditation murders solely for the sake of taking a life. It strikes me that there is, or that there ought to be, a difference in punishment between these two types of people. The former is less culpable than the latter. A person who has previously been the victim of a violent crime who later panics and under an unreasonable but actual belief takes the life of another because he or she actually believes that his or her person is in danger is not as culpable as one who kills in cold-blood for no reason other than to murder another. These two people should not be treated the same.

Furthermore, it is important to note that by concluding that these two people should not be treated the same, is not to say that the person who acts with an unreasonable belief as to an interference with his or her person will not be punished. It appears the majority would like us to believe the opposite with its repeated assertions that these people will "escape" a conviction for first-degree murder. Persons who act with unreasonable beliefs as to interferences with their persons are guilty of imperfect self-defense manslaughter (2nd degree intentional homicide) and do not escape punish-

ment. They are severely punished, but to a lesser degree than those who kill solely for the sake of killing.[1]

Furthermore, the public policy expressed by the majority to the effect that if the law did not require an objective element every defendant who claimed an actual belief in the need to use force would escape conviction for first-degree murder is inaccurate. It does not hold up under close scrutiny. Essentially, the majority's statement must be read to mean that if the law required only an actual belief, the defendant's assertions of such a belief could never be disproved, i.e., he would automatically be convicted of imperfect-self defense manslaughter. In other words, the State could never disprove such a belief because it is subjectively held by the defendant. This assertion seems odd in light of the majority's own recognition that in three cases this court had no difficulty in concluding that a defendant did not have an "actual" subjective belief regarding the use of force necessary. *See State v. Johnnies*, 76 Wis. 2d 578, 251 N.W.2d 807 (1977); *Roe v. State*, 95 Wis. 2d 226, 290 N.W.2d 291 (1980); *Bedford v. State*, 65 Wis. 2d 357, 222

---

[1] The current section 940.01, Stats., provides that one who is convicted of first-degree intentional homicide is guilty of a Class A felony. The penalty for conviction of a Class A felony is life imprisonment. Section 939.50(3)(a). A person who is convicted of imperfect self-defense manslaughter is guilty of 2nd degree intentional homicide and is guilty of a Class B felony. Section 940.01 (2)(b), sec. 940.05. The penalty for a Class B felony is imprisonment not to exceed 20 years. Section 939.50(3)(b).

Under the 1985 statutes, intentional homicide was a Class A felony with a penalty of life imprisonment. The 1985 statute governing imperfect self-defense manslaughter, sec. 940.01, Stats., provides that anyone convicted under the statute is guilty of a Class C felony. Section 939.50(3)(c) (1985–86) provides that the penalty for conviction of a Class C felony is a fine not exceed $10,000 or imprisonment not to exceed 10 years, or both.

N.W.2d 658 (1974). The majority's misstep is asserting that a defendant may merely "claim" an actual belief in order to show imperfect self-defense manslaughter. As the three cases cited above indicate regarding actual beliefs, a defendant may not merely "claim" an actual belief; he or she must put forth evidence in order to prove such a belief or one will not be found under the law.

In conclusion, there is authority for treating these two types of people differently under the criminal law. I recognize there is arguable authority for treating them the same. However, given the policy behind the criminal law, I conclude that the legislature must have intended that they be treated differently. *See State v. Seifert,* 155 Wis. 2d 53, 74–75, 454 N.W.2d 346 (1990) (Abrahamson, J., dissenting).

I am authorized to state that Chief Justice NATHAN S. HEFFERNAN and Justice SHIRLEY S. ABRAHAMSON join in this dissent.